IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ESP PETROCHEMICALS, INC., | § | CASE NO.  16-60020-H2-11 |
| | § | |
| ESP RESOURCES, INC., | § | CASE NO.  16-60021-H2-11 |
| | § | |
| DEBTORS. | § | Joint Administration Requested |

## EMERGENCY MOTION TO MAINTAIN PRE-PETITION BANK ACCOUNTS AND CASH MANAGEMENT SYSTEM

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**AN EMERGENCY HEARING ON THIS MOTION IS SCHEDULED FOR MONDAY, MARCH 14, 2016 AT 10:30 AM IN COURTROOM 400, 515 RUSK, HOUSTON, TX 77002.**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.   IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**

**\*\* EMERGENCY RELIEF HAS BEEN GRANTED.  YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER.  IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED; YOU SHOULD FILE AN IMMEDIATE RESPONSE OR APPEAR AT THE SCHEDULED HEARING.**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

ESP Petrochemicals, Inc. and ESP Resources, Inc. (collectively "ESP" or "Debtors"),

debtors and debtors in possession, files this Motion for an Order (i) Authorizing Maintenance of

Existing Corporate Bank Accounts and Cash Management System; and (ii) Authorizing Continued Use of Existing Business Forms and Records and Request for Expedited Hearing (the "Motion") and in support thereof would respectfully show the Court as follows:

## I.   SUMMARY OF RELIEF REQUESTED

1.      Prior to the commencement of these cases, as part of its ordinary business practices, the Debtors maintained a Cash Management System, which includes the use of numerous Bank Accounts, established business forms and checks. The continuation and maintenance of the Cash Management System without disruption is essential to protect the Debtors' relationships with vendors, contract parties and employees. All parties-in-interest will benefit if Debtors are allowed to maintain their Cash Management System because it will preserve the integrity of the Debtors' financial relationships, reduce the impact of the Debtors' Chapter 11 filings on its workforce and allow for a smoother transition to operating in Chapter 11.   Accordingly, the Debtors respectfully request that this Court authorize the continued use of the existing Cash Management System and grant it limited relief from Section IV of the Region 7 U.S. Trustee Guidelines.

## II.   JURISDICTION & VENUE

2.      This Court has jurisdiction by virtue of 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1), (b)(2)(A) and (M).

3.      Venue is proper in this district pursuant to 28 U.S.C. § to §§ 1408 and 1409.

4.      The relief sought in this Motion is based upon §§ 105 and 363 of the Bankruptcy Code.

## III.   BACKGROUND INFORMATION

5.      The above captioned Chapter 11 bankruptcy cases were each was filed on March 10, 2016 ("Petition Date") under Chapter 11 of Title 11 of the Bankruptcy Code, 11 U.S.C. §§101

et sq. (the "Bankruptcy Code").   The Debtors continue to manage their respective property as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

6.       No trustee or examiner has been appointed in the Debtors' bankruptcy cases.  An official committee of unsecured creditors has not yet been established.

7.       A detailed factual background of the Debtors' business and operations, as well as the commencement of these Chapter 11 cases, is more fully set forth in the *Declaration of David Dugas in Support of the Debtors' Chapter 11 Petitions and Requests for First-Day Relief* filed contemporaneously herewith and incorporated herein by reference.  A brief summary of the factual background is listed below.

8.       ESPI is a publically traded holding company, with no independent operations apart from its subsidiaries.  ESPP is a wholly owned subsidiary of ESPI that manufactures, distributes, markets and supplies specialty chemicals for a variety of oil and gas field applications including killing bacteria, separating suspended water and other contaminants from crude oil, separating the oil from the gas, pumping enhancement, pumping cleaning, as well as a variety of fluids and additives used in the drilling and production process.  Customers of ESPP are typically oil and gas exploration customers who drill and operate wells.

9.       Since 2014, ESP has been negatively impacted by the decline in oil prices affecting the entire oil industry.  The rapid and unexpected decline in oil prices led to a significant decline in fracking activity by ESP's customers.  Five major customers account for over 60% of ESPP's revenue.  As a result of the of the sustained drop in oil prices, three of these customers discontinued fracking activity in the Eagle Ford and North Texas shale regions, causing ESP's revenue to drop by more than 36% in 2015.  Company sales through September 2015 were $5,600,198, compared

to $8,814,225 for the same period in 2014.  This decrease in sales and liquidity caused the companies to default in obligations and the subsequent bankruptcy filings`.

## RELIEF REQUESTED

10.     The Debtors request, pursuant to §§ 105(a), 363(c), and 364(a) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, the entry of an order (i) authorizing the Debtors to maintain bank accounts and Cash Management System; and (ii) authorizing the Debtors to continue using existing business forms and records.

### A.     Cash Management

11.     Prior to the Petition Date, in the ordinary course of business, the Debtors maintained a centralized cash management system ("Cash Management System") to efficiently collect, transfer, and disburse funds generated by its business operations.   A list of the Debtors' current bank accounts ("Bank Accounts") and a description of their uses is attached hereto as Exhibit "A" and incorporated by reference.

12.     The Debtors maintain the Cash Management System, which allows the Debtors to conduct all banking and cash management activities in a manner designed to minimize costs, maintain adequate liquidity, ensure proper controls, and account for cash assets. To facilitate the smooth operation of this Cash Management System, the Debtors have established and maintain numerous Bank Accounts, standard checks and customary business forms. Prior to the Petition Date, and in the ordinary course of business, the Debtors utilized the Cash Management System which is similar to cash management systems used by other enterprises.

13.     As noted above, any disruption of the Cash Management System will strain relations with parties who are vital to the Debtors' businesses - i.e., insurance companies, vendors, suppliers, counter-parties to contracts and employees - and, thus, will adversely impact business

operations and all parties-in-interest. Accordingly, the Debtors request authority to continue the Cash Management System, including the use of existing Bank Accounts at Mid-South Bank, checks and business forms, to avoid the disruption that would result from the Debtors having to create a new cash management system and to establish new bank accounts.

14.     Except as described in Exhibit A, all of the Bank Accounts are managed on a stand-alone basis. This active, day-to-day management of accounts—handled primarily by the Debtors' accounting department—involves the daily monitoring of account balances. Mr. David Dugas and Mr. Anthony Primeaux are the authorized signatories on the Bank Accounts.

### B.  Continuation of the Debtors' Existing Cash Management System And Bank Accounts is in the Best Interests of the Debtors' Estates

15.     This Cash Management System has been in place and is similar to those commonly employed by business enterprises of size and complexity comparable to the Debtors.  The successful operation of the Debtors' business requires that the Cash Management System be continued during the pendency of these cases, because any disruption of this system could unnecessarily impede the Debtors' reorganization efforts.  It would not be possible to promptly establish an equally efficient new Cash Management System.  Without access to the existing system, the Debtors would be forced to establish a new system for handling receipts and disbursements and to manually obtain and generate its financial information at substantial additional costs, until a new system can be created.  Establishment of a new system would entail delay and costs.  At a minimum, substantial disruptions to the Debtors' business would occur by, among other things, delaying payments to vendors, employees and others, which in turn would harm creditors, employee loyalty and hinder the Debtors' chances of a successful reorganization.

16.     Further, the maintenance of the existing Cash Management System as proposed will not prejudice any party.  The Debtors will continue to maintain detailed records with respect to transfers of cash so that all transactions are adequately documented and readily ascertainable.

17.     The Debtors' Cash Management System constitutes an ordinary course, essential business practice. The Cash Management System provides significant benefits to the Debtors including, *inter alia*, the ability to: (i) control corporate funds, (ii) ensure the maximum availability of funds when necessary, and (iii) reduce administrative expenses by facilitating the movement of funds and the development of more timely and accurate account balance information. Based upon the foregoing, maintenance of the existing cash management system is in the best interests of the Debtors, creditors, and other parties in interest and is necessary for the effective reorganization of the Debtors' operations.

18.      Integrally related to the Cash Management System is the continued use of the Debtors' Bank Accounts. The Debtors, their respective employees and vendors would suffer great hardship if the Debtors were required to substitute new bank accounts for the existing Bank Accounts.  Substitution of the Bank Accounts would essentially render this Court's approval of the continuation of their Cash Management System, if granted, meaningless, and inevitably lead to the same delays, confusion and disruption of the Debtors' businesses that discontinuation of the cash management procedures would cause. Furthermore, because some receivables are electronically transmitted directly into Debtors' accounts, any change in these accounts will prevent the timely deposit of payments which comprise a significant portion of Debtors' monthly cash flow. It would be disastrous to alter the timely deposits of these accounts, especially in light of the Debtors' continuing cash flow constraints. By preserving business continuity and avoiding the operational and administrative paralysis that closing the Bank Accounts and opening

new ones would necessarily entail, all parties in interest will be best served and the Debtors will benefit considerably.

19.     The Debtors also request authority to (i) continue paying monthly fees and service charges with respect to the Bank Accounts in the ordinary course of business, including any portion of such fees attributable to prepetition services; (ii) close any bank account if, in the exercise of its business judgment, the Debtors determine that such action is in the best interest of their respective estates; and (iii) an order directing Mid-South Bank to comply with the Debtors' instructions on use of the Bank Accounts and funds contained therein.

## C.  Waiver of Requirement Regarding Business Forms

20.     Further, the Debtors utilize numerous standard business forms, including, but not limited to, invoices, purchase orders, form contracts, and bills of lading. The Debtors request authority to simply use these existing pre-printed business forms, rather than obtain new business forms reflecting their status as debtors-in-possession and listing the case number under which these cases are being jointly administered. Substantial time and expense would be consumed if the Debtors were required to print new business forms and stationery merely to indicate "Debtor-in-Possession."

## D. Waiver of Trustee Guidelines

21.     The United States Trustee has established certain operating guidelines for a debtor-in-possession who operates its business, including that a Chapter 11 debtor must open new bank accounts and close pre-petition accounts.  This requirement is designed to (a) provide a clear line of demarcation between pre-petition and post-petition transactions and operations, and (b) block the inadvertent payment of pre-petition claims through payment of checks drawn prior to the filing of the petition.  The United States Trustee also has established guidelines requiring that a debtor

in possession to modify its business forms so that such forms contain a "debtor-in-possession" designation.

22.     The Debtors respectfully request that the Court waive the requirements of the United States Trustee that the Debtors close pre-petition Bank Accounts and open new bank accounts.  The Debtors' operations would be harmed by the disruption, confusion, delay, and cost that would most certainly result from rigid compliance with the Guidelines. In other large Chapter 11 cases, bankruptcy courts routinely recognize that strict enforcement of the requirement that a debtor–in-possession close its bank accounts does not serve the rehabilitative process of Chapter 11. Accordingly, these courts have waived such requirements and replaced them with alternative procedures such as those proposed here.

## V.     APPLICABLE AUTHORITY

23.     Section 105 of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Courts have long recognized that the power granted by § 105(a) was expressly meant to be exercised to effectuate the rehabilitation of the debtor. See, e.g., *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 16 (1977)).  The relief requested in this Motion is critical to the Debtors' successful reorganization and is justified under § 105(a).

24.     The Debtors submit the relief requested herein is appropriate and well within the authority of this Court. The Debtors request authorization to continue the Cash  Management System is entirely consistent with § 363(c)(1) of the Bankruptcy Code, which allows a debtor-in-possession to "use property of the estate in the ordinary course of business." See *In re Charter Co*., 778 F.2d 617, 621 (11th Cir. 1985). In complex Chapter 11 cases, courts have routinely waived

the requirements of the UST Guidelines, recognizing that they are often impractical and potentially detrimental to a debtor's post-petition business operations and restructuring efforts.  See, e.g., *In re Southmark Corp.,* 49 F.3d 1111, 1114 (5th Cir. 1995) (stating that the cash management system allows the debtor "to administer more efficiently and effectively its financial operations and assets").  Indeed, the continued use of cash management systems similar to those maintained by the Debtor have been approved as a routine matter in unreported orders in a number of large and complex Chapter 11 cases in this district. See *In re Manchester, Inc.,* et al., Case No. 08-30703 (BJH) (Bankr. N.D. Tex. Feb. 17, 2008) [Docket No. 75]; *and In re Mirant Corporation, et al.,* Case No. 03-46590 (DML) (Bankr. N.D. Tex. July 16, 2003) [Docket No. 47].

25.    Additionally, § 363(c)(1) of the Bankruptcy Code authorizes the debtor-in-possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of § 363(c)(1) of the Bankruptcy Code is to provide a debtor-in-possession with the flexibility to engage in the ordinary course transactions required to operate its business without unneeded oversight by its creditors or the Court.  *Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997); *In re Git-N Go, Inc.*, 322 B.R. 164, 171 (Bankr. N.D. Okla 2004); *In re Enron Corp.*, No. 01-16034 (ALG), 2003 WL 1562202, at *15 (Bankr. S.D.N.Y. Mar. 21, 2003); *In re Atlanta Retail, Inc.*, 287 B.R. 849, 856 (Bankr. N.D. Ga. 2002); *Chaney v. Official Comm. of Unsecured Creditors of Crystal Apparel, Inc.* (In re Crystal Apparel, Inc.), 207 B.R. 406, 409 (S.D.N.Y. 1997).  Included within the purview of § 363(c) is a debtor's ability to continue the "routine transactions" necessitated by a debtor's cash management system.  *Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996).

26.     In view of the time delay and confusion that would be involved in creating a new Cash Management System, opening new bank accounts, and closing existing bank accounts, and printing new purchase orders, invoices and other forms, it is imperative that the Debtors be permitted to continue to use its existing systems, accounts, and forms in order to avoid disruption to the normal operation of its business.  The Debtors currently have in place reliable record keeping system and will be able to ensure that all pre-petition and post-petition transactions are adequately documented and readily ascertainable. Accordingly, the Debtors seek authority under § 363(c)(1) of the Bankruptcy Code to continue the collection, concentration, and disbursement, including intercompany transfers, of cash pursuant to its Cash Management System described above.

## IV. NOTICE

27.     Notice of this Motion has been provided to the Office of the United States Trustee for the Southern District of Texas, the Debtors' secured creditors, the 20 largest unsecured creditors of each of the Debtor, certain governmental entities, counsel and parties-in-interest.  No other or further notice need be provided.

WHEREFORE, the Debtors respectfully request entry of an order: (i) authorizing the Debtors' continued use of their Cash Management System, Bank Accounts, checks and business forms as identified and described herein, and (ii) granting such other and further relief as is just and proper.

Dated: March 11, 2016

Respectfully submitted,

HOOVER SLOVACEK LLP

By:     /s/ Melissa A. Haselden
                MELISSA A. HASELDEN
                State Bar No. 00794778
                5051 Westheimer, Suite 1200
                Houston, Texas 77056
                Telephone: 713.977.8686
                Facsimile:  713.977.5395
                haselden@hooverslovacek.com

                PROPOSED ATTORNEYS FOR DEBTORS and
                DEBTORS IN POSSESSION

**OF COUNSEL:**
Hoover Slovacek LLP
EDWARD L. ROTHBERG
State Bar No. 17313990
ANNIE CATMULL
State Bar No. 00794932
T. JOSH JUDD
State Bar No. 24036866
DEIRDRE CAREY BROWN
State Bar No. 24049116
BRENDETTA A. SCOTT
State Bar No. 24012219
5051 Westheimer, Suite 1200
Houston, Texas 77056
Telephone: 713.977.8686
Facsimile:  713.977.5395

**EXHIBIT A**

| Bank Name | Entity | Type of Account | Account no. ending |
|-----------|--------|-----------------|--------------------|
| MidSouth Bank | ESP Resources | Operating | *1320 |
| MidSouth Bank | ESP PetroChemicals | Operating | *0502 |
| MidSouth Bank | ESP PetroChemicals | Payroll | *0529 |
| MidSouth Bank | ESP PetroChemicals | Incoming Wire Acct | *5294 |