**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| ESP PETROCHEMICALS, INC. | § | CASE NO.  16-60020-V2-11 |
| ESP RESOURCES, INC. | § | CASE NO.  16-60021-V2-11 |
| | § | |
| | § | Jointly Administered Under |
| Debtors | § | Case No. 16-60020-V2-11 |
| | § | Judge David R. Jones |

## DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION

OF COUNSEL:

***HOOVER SLOVACEK, LLP***

EDWARD L. ROTHBERG
State Bar No. 17313990
MELISSA A. HASELDEN
State Bar No. 00794778
5051 Westheimer, Suite 1200
Galleria Tower II
Houston, Texas 77056
Telephone: 713.977.8686
Facsimile:  713.977.5395

***ATTORNEYS FOR DEBTORS***

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: | § | **Chapter 11** |
| | § | |
| **ESP PETROCHEMICALS, INC.** | § | **CASE NO.  16-60020-V2-11** |
| **ESP RESOURCES, INC.** | § | **CASE NO.  16-60021-V2-11** |
| | § | |
| | § | **Jointly Administered Under** |
| **Debtors** | § | **Case No. 16-60020-V2-11** |
| | § | **Judge David R. Jones** |

## DEBTORS' JOINT CHAPTER 11 PLAN OF LIQUIDATION

The Debtors, ESP Petrochemicals, Inc. ("ESPP") and ESP Resources, Inc. ("ESPI") (collectively "ESP" or "Debtors"), propose the following Joint Plan of Liquidation (the "Plan") in this proceeding for the resolution of outstanding creditor claims and equity interests pursuant to Chapter 11 of the Bankruptcy Code.  The Debtors are the proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code.  All holders of claims against and equity interests in the Debtors are encouraged to read the Plan and accompanying Disclosure Statement in their entirety before voting on the Plan.

## ARTICLE 1
### INTRODUCTION AND GENERAL PURPOSES OF THE PLAN

ESPI is a publicly traded holding company.  Debtors operations are conducted through ESPP, a wholly owned subsidiary of non-operating entity ESP Ventures, Inc., a wholly owned subsidiary of ESPI. ESPP manufactures, distributes, markets and supplies specialty chemicals for a variety of oil and gas field applications including killing bacteria, separating suspended water and other contaminants from crude oil, separating the oil from the gas, pumping enhancement, pumping cleaning, as well as a variety of fluids and additives used in the drilling and production process.  The drastic downturn in oil and gas prices significantly impacted the Debtors' revenue and cash flow, thereby prompting the filing of these Chapter 11 cases.

The Debtors have determined that the most prudent course of action to maximize distributions to Creditors in this case is to sell substantially all of their assets ("Property") pursuant to a Section 363 sale in connection with its plan, with the proceeds thereof to be utilized to fund the Plan.  Senior Lender has consented to the sale and will be entitled to credit bid its debt.  In that connection, the Debtors will seek approval of bidding procedures, with a sale expected to be conducted in _____, 2017.  The highest and best offer from the Qualified Bids will be submitted to the Court for approval.

The Plan provides for the payment to Creditors as follows in the order of priority required by the Bankruptcy Code: (1) Allowed Administrative Claims will be paid in full from existing Cash and Net Sales Proceeds, unless otherwise agreed; (2) ad valorem property taxes through 2016 will be paid from Net Sales Proceeds; (3) 2017 ad valorem property taxes will be prorated through the Closing Date, with Debtor to pay its pro-rated share through Closing from Net Sales Proceeds and the auction purchaser to assume the balance; (4) remaining Cash and a portion of the Net Sales Proceeds will be used first to satisfy the Allowed Secured Claim of Hilliar; (5) after payment of Claims in (1) – (4) described above, remaining Net Sales Proceeds shall be used to pay the secured value of the Allowed Secured Claim ARC; (6) Allowed Priority Claims shall receive a pro rata share of remaining Net Sales Proceeds after payment of (1) - (5) above; (7) General Unsecured Claims will a pro rata share of remaining Net Sales Proceeds after payment of (1) – (6) above; (8) the Equity Interest Holders shall have interests cancelled and will a pro rata share of remaining cash if Allowed Class 5 General Unsecured Claims are paid in full; (9) the Warrants Interest Holders shall have interests cancelled and will receive no distribution under the Plan.

Confirmation of the Plan will enable the Debtors to provide at least the same or a greater dividend for Allowed General Unsecured Claims than under a Chapter 7 proceeding.

## ARTICLE 2
### DEFINITIONS

2.1     For purposes of the Plan the following terms shall have the respective meanings specified as follows:

2.1.1   <u>Administrative Claim</u> shall mean any Claim that is defined in Section 503(b) of the Bankruptcy Code as being an "administrative expense" within the meaning of such section and referenced in Bankruptcy Code Section 507(a)(1) including, without limitation, the actual, necessary costs and expenses of preserving each Debtor's estate and operating the business of each Debtor, including wages, salaries, or commissions for services rendered after the commencement of the case, compensation for legal and other services and reimbursement of expenses Allowed or awarded under Bankruptcy Code Sections 330(a) or 331, and all fees and charges assessed against the estate of each Debtor under title 28 of the United States Code.

2.1.2   <u>Allowed Claim or Allowed Interest</u> shall mean a Claim or Interest (a) in respect of which a proof of claim or application has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Creditors prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b) and not listed as Disputed Claims or contingent or liquidated as to amount, in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Bankruptcy Rule 3001 or an order of the Bankruptcy Court, or this Plan, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending or as otherwise allowed under this Plan.  An Allowed Claim may refer to a Secured Claim, a General Unsecured Claim, an Administrative Claim or a Priority Claim as the context provides.

2.1.3   <u>Amerisource</u> means Amerisource Funding, Inc., the factoring company which factor Debtors' accounts receivable and retains a lien on substantially all assets of the Debtors in accordance with the Amerisource DIP Financing Order entered by the Court on May 17, 2016 at Docket #115.

2.1.4   <u>Amerisource DIP Financing</u> means that Purchase and Sale Agreement, along with related documents, between the Debtors and Amerisource whereby Amerisource purchased outstanding accounts receivable previously factored to Transfac and provided post petition factoring services to the Debtors.

2.1.5   <u>Amerisource DIP Financing Order</u> shall mean that Order entered by the Bankruptcy Court on May 17, 2016 at Docket #115 authorizing the Debtors', amongst other things, to an agreement with Amerisource for the sale of accounts receivable in accordance with the terms of the agreement and grants Amerisource a first lien in substantially all of Debtors' remaining assets.

2.1.6     <u>APA</u> shall mean the Asset Purchase Agreement executed by the Purchaser.

2.1.7     <u>ARC</u> means ARC Products, Inc., a secured creditor with a subordinated lien on substantially all assets of Debtor ESP Petrochemicals, Inc.

2.1.8     <u>Auction</u> means the auction set by the Bankruptcy Court for the sale of the Property subject to competitive bidding.

2.1.9     <u>Avoidance Actions</u> shall mean any and all rights, claims and causes of action arising under any provision of Chapter 5 of the Bankruptcy Code, or similar state law, such as the Uniform Fraudulent Transfer Act or Uniform Fraudulent Conveyance Act, as enacted.

2.1.10   <u>Bankruptcy Code</u> shall mean the Bankruptcy Code, 11 U.S.C. §101 *et seq.*, as it existed on the Filing Date.

2.1.11   <u>Bankruptcy Court</u> shall mean the United States Bankruptcy Court for the Southern District of Texas, Victoria Division, in which the Debtors' Chapter 11 cases, pursuant to which the Plan is proposed, are pending, and any Court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

2.1.12   <u>Bankruptcy Estates</u> shall mean all of the assets owned by the Debtors and their respective estates.

2.1.13   <u>Bankruptcy Rules</u> shall mean the rules of procedure in bankruptcy cases applicable to cases pending before the Bankruptcy Court and local bankruptcy rules as adopted by the Bankruptcy Court.

2.1.14   <u>Bar Date</u> shall mean the deadline of July 25, 2016, established by the Bankruptcy Court as the date by which proofs of claim had to be filed.

2.1.15   <u>Bidding Procedures</u> means the court approved procedures governing the terms and conditions of the Auction of the Property.

2.1.16   <u>Bidding Procedures Order</u> means that certain order to be obtained from the Bankruptcy Court providing for the terms and conditions of the Auction of the Property.

2.1.17   <u>Cash</u> shall mean Cash and Cash equivalents including, without limitation, checks and wire transfers.

2.1.18   <u>Claim</u> shall have the meaning given in Section 101 of the Bankruptcy Code, to wit, any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, a Debtor in existence on or before the Filing Date, whether or not such right to payment or right to equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, Disputed, undisputed, legal, secured or unsecured whether or not asserted.

2.1.19   <u>Class</u> shall mean any class into which Allowed Claims or Allowed Interests are classified pursuant to Article 4.

2.1.20  <u>Class 1 Claims, Class 2 Claims, Class 3 Claims, Class 4 Claims and Class 5 Claims</u> shall mean the Claims so classified in Sections 4.1 through 4.5 respectively.

2.1.21  <u>Class 6</u> Interests shall mean the Allowed Interests of Equity.

2.1.22  <u>Class 7</u> Interests shall mean the Allowed Interests of Warrants Holders.

2.1.23  <u>Closing</u> means the transfer of the Property to any Purchaser pursuant to Article 7, <u>infra</u>.

2.1.24  <u>Closing Date</u> means the date upon which the Closing occurs.

2.1.25  <u>Confirmation Date</u> shall mean the date upon which the Confirmation Order is entered by the Clerk of the Bankruptcy Court.

2.1.26  <u>Confirmation Hearing</u> shall mean the hearing held by the Bankruptcy Court to consider confirmation of the Plan.

2.1.27  <u>Confirmation Order</u> shall mean the order entered by the Bankruptcy Court confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

2.1.28  <u>Creditor</u> shall mean any entity holding a Claim.

2.1.29  <u>Debtors</u> shall collectively mean ESP Petrochemicals, Inc. and ESP Resources, Inc.

2.1.30  <u>Disbursing Agent</u> shall mean ESP Petrochemicals, Inc., acting through its duly appointed agent or agents as may be appointed by the Debtors.

2.1.31  <u>Disclosure Statement</u> shall mean the written document filed by the Debtors in accordance with Section 1125(b) of the Bankruptcy Code containing information sufficient to enable a hypothetical reasonable investor typical of Holders of Claims or Interests of the relevant Class to make an informed judgment about this Plan.

2.1.32  <u>Disallowed Claim</u> shall mean any Claim or portion thereof which has been disallowed by a Final Order and includes any Claim which is not an Allowed Claim for any other reason.

2.1.33  <u>Disputed Claim</u> shall mean that portion (including, where appropriate, the whole) of any Claim (other than an Allowed Claim) that (a) is listed in the Debtor's schedules of liabilities as disputed, contingent, or unliquidated; (b) is listed in the Debtor's schedules of liabilities and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim exceeds the scheduled amount; (c) is not listed in the Debtors' schedules of liabilities, but as to which a proof of Claim has been filed with the Bankruptcy Court; or (d) as to which an objection has been filed and has not become an Allowed Claim.

2.1.34  <u>Effective Date</u> shall mean the later of the date upon which the Confirmation Order becomes a Final Order, or the Closing Date, or such later date as agreed to by the Debtor.

2.1.35  <u>Equity Interest</u> shall mean the interests represented by an "equity" security as defined in Section 101 of the Bankruptcy Code, including all preferred and common stock in the Debtors.

2.1.36  <u>Executory Contract(s)</u> shall mean any Pre-petition Unexpired lease(s) or executory contract(s) of the Debtors within the meaning of Section 365 of the Bankruptcy Code.

2.1.37  <u>Excluded Property</u> shall mean Cash from operations of the Property and sale proceeds which will not be transferred to the Purchaser and other excluded property under the APA.

2.1.38  <u>Filing Date</u> shall mean March 10, 2016, the date the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code.

2.1.39  <u>Final Order</u> shall mean an order or judgment of a Court which has become final in accordance with law, and which has not been stayed pending appeal.

2.1.40  <u>General Unsecured Claim</u> shall mean either (i) a Claim that is not secured by a lien, security interest or other charge against or interest in property in which Debtors have an interest or which is not subject to setoff under Section 553 of the Bankruptcy Code; (ii) a Claim that is not a Secured Claim; (iii) a Claim that is not an Administrative Claim; (iv) a Claim that is not a Priority Claim; or (v) a Claim that is not otherwise entitled to priority under Bankruptcy Code Sections 503 or 507.

2.1.41  <u>Hillair</u> means Hillair Capital Investments L.P., the holder of a prepetition secured claim against the Debtors in the principal amount of $1,375,000, plus interest.

2.1.42  <u>Holder</u> shall mean the owner or Holder of any Claim or Interest.

2.1.43  <u>Interest</u> shall mean an Interest (a) in respect to which a proof of interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Equity Security Holders prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b).

2.1.44  <u>Insider</u> has the definition ascribed to it under the Bankruptcy Code.

2.1.45  <u>Lien</u> shall mean a "lien" as defined in Section 101(37) of the Bankruptcy Code.

2.1.46  <u>Net Sales Proceeds</u> means all proceeds from the 363 Sale and transfer or conveyance of the Property, net of all respective necessary and actual costs and expenses associated with such transaction (including, without limitation, any broker fee/commission, advertising, documentation, reasonable attorneys' fees and other costs, fees and expenses approved by the Bankruptcy Court.

2.1.47  <u>Person</u> shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

2.1.48  <u>Plan</u> shall mean the Debtors' Joint Chapter 11 Plan of Liquidation, as altered, modified or amended in accordance with the terms hereof in accordance with the Bankruptcy Code, the Bankruptcy Rules and this Plan.

2.1.49  <u>Priority Claim</u> shall mean any Claim that is defined in Section 507(a)(2)-(8) of the Bankruptcy Code.

2.1.50  <u>Professionals</u> shall mean all professionals employed in this case pursuant to Section 327 or 1103 of the Bankruptcy Code.

2.1.51  <u>Property</u> shall mean substantially all of the assets of ESP Petrochemicals, Inc. and ESP Resources, Inc., to be sold to the Purchaser at the Auction.

2.1.52  <u>Pro-Rata</u> shall mean the proportion that the Allowed amount of such Claim bears to the aggregate amount of Claims in each respective Class.

2.1.53  <u>Purchaser</u> shall mean the entity that purchases the Property at the Auction.

2.1.54  <u>Qualified Bid</u> shall have the meaning set forth in the Bidding Procedures.

2.1.55  <u>Qualified Bidder</u> shall have the meaning set forth in the Bidding Procedures.

2.1.56  <u>Sale Approval Order</u> means an order that may be entered by the Bankruptcy Court approving the Sale of the Property pursuant to section 363 of the Bankruptcy Code, or as part of the Order Confirming the Plan.

2.1.57  <u>Secured Claim</u> shall mean a Claim secured by a lien, security interest or other charge against or interest in property in which the Debtors have an interest, or which is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of the Holder of such Claim in the Debtors' interest in such property or to the extent of the amount subject to such setoff, as the case may be.

2.1.58  <u>Substantial Consummation</u> shall occur on the Effective Date.

2.1.59  <u>Successful Bidder</u> shall have the meaning ascribed in the Bidding Procedures.

2.1.60  <u>363 Sale</u> means a proposed sale of the Property outside of, but in conjunction with the Plan, pursuant to section 363 of the Bankruptcy Code.

2.1.61  <u>Interpretation</u>.  Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective sections, articles of or exhibits to the Plan, as the same may be amended, waived or modified from time to time.  The headings and table of contents in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.  Words denoting the singular number shall include the plural number and vice versa and words denoting one gender shall include the other gender.  All exhibits and schedules attached to the Plan are incorporated herein by such attachment.

2.1.62  <u>Application of Definitions and Rules of Construction Contained in the Bankruptcy Code</u>.  Words and terms defined in Section 101 of the Bankruptcy Code shall have the same meaning when used in the Plan, unless a different definition is given in the Plan.  The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

2.1.63  <u>Other Terms</u>.  The words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan.  A term used herein that is not defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

**ARTICLE 3**
<u>ADMINISTRATIVE AND PRIORITY CLAIMS</u>

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Claims have not been classified and are treated and described in this section.

3.1  <u>Administrative Claims Bar Date</u>.  Any Holder of an Administrative Claim (including any cure Claims for executory contracts or leases that are assumed pursuant to this Plan, or pursuant to a 363 sale including Lease Claims) against the Debtors, except for administrative expenses incurred in the ordinary course of operating the Debtors' business, shall file an application for payment of such Administrative Claim on or within sixty (60) days after entry of the Confirmation Order with actual service upon counsel for the Debtors, otherwise such Holder's Administrative Claim will be forever barred and extinguished and such Holder shall, with respect to any such Administrative Claim, be entitled to no distribution and no further notices.  The Debtors shall pay pre-confirmation quarterly U.S. Trustee fees in full in Cash within thirty (30) days after the Effective Date.  U.S. Trustee fees which accrue after confirmation shall be paid by the Reorganized Debtor until the case is closed or converted.

3.2  <u>Payment of Administrative Claims</u>.  Each Holder of an unpaid Allowed Administrative Claim shall be paid in full from existing Cash and Net Sales Proceeds on the later of:  fourteen (14) days after the Effective Date, fourteen (14) days after the Closing Date, or the date such Claim becomes an Allowed Administrative Claim, unless the Holder of such Claim agrees to a different treatment.

3.3  <u>Payment of Priority Claims</u>.  On the later of fourteen (14) days after the Effective Date, fourteen (14) days after the Closing Date, or the date such Claim becomes an Allowed Priority Claim, Each Holder of an unpaid Allowed Priority Claim shall be paid a pro rata share of remaining Net Sales Proceeds after payment in full of claims of higher priority, including Allowed Administrative Claims, Allowed Class 1 Claims, Allowed Class 2 Claims, Allowed Class 3 Claims, and Allowed Class 4 Claims (to the extent collateral is not surrendered to the Holder of a Class 4 claim), as provided in 11 USC §502, including payment unless the Holder of such Claim agrees to a different treatment.

3.4  <u>Payment to Professionals</u>.  All payments to professionals for actual, necessary services and costs advanced in behalf of the bankruptcy cases up until the Confirmation Date shall be pursuant to Bankruptcy Court order and subject to the restrictions of 11 U.S.C. §330.

Professional fees incurred for services rendered and costs advanced subsequent to the Effective Date shall be paid from Net Sales Proceeds.

## ARTICLE 4
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

The Plan provides for the division of Claims and Interests into seven Classes.

Classification and Specification of Treatment of Claims and Interests. All Claims and Interests, except Administrative Claims and Priority Claims, are placed in the following Classes of Claims and Interests, pursuant to Bankruptcy Code Section 1123(a)(1). This section specifies the treatment of such Classes of Claims and Interests and of their impaired or unimpaired status, pursuant to Bankruptcy Code Sections 1123(a)(2) and (3). A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of the Class and is classified in a different Class to the extent that the Claim or Interest qualifies within the description of that different Class. A Claim or Interest is in a particular Class only to the extent that the Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, withdrawn, waived, settled, or otherwise satisfied.

Subject to all other applicable provisions of the Plan (including its distribution provisions), classified Claims and Interests shall receive the treatment set forth below. The Plan will not provide any distributions on account of a Claim or Interest to the extent that such Claim or Interest has been Disallowed, released, withdrawn, waived, settled, or otherwise satisfied or paid as of the Effective Date, including, without limitation, payments by third party guarantors, sureties, or insurers, whether governmental or nongovernmental. The Plan will not provide any distributions on account of a Claim or Interest, the payment of which has been assumed by a third party.

4.1     Class 1.  Allowed Secured Claim of Taxing Authorities.

4.1.1     Classification.  Class 1 consists of the Allowed Secured Claims of Ad Valorem taxing authorities accrued through the earlier of entry of the Sale Approval Order or the Effective Date and secured by a lien on all of the Debtor ESP's assets.

4.1.2     Treatment.  Allowed Secured Class 1 Claims shall be paid in full when due from Net Sales Proceeds within fourteen (14) days after the Closing Date. The Allowed Secured Class 1 Claims Holders shall retain their liens until such time as they are paid in full.

4.1.3     Impairment.  The Class 1 Claims are unimpaired.

4.2     Class 2.  Allowed Secured Claim of Hillair.

4.2.1     Classification.  Class 2 consists of the Allowed Secured Claim of Hillair secured by the Debtors' Property and proceeds thereof.  Hillair has asserted a claim in the principal balance of $1,375,000, plus interest and fees.

4.2.2     Treatment.  Allowed Secured Class 2 Claims shall be paid in full within fourteen (14) days after the Closing Date from existing Cash and Net Sales Proceeds, unless the

Holder of the Class 2 Claim agrees to a different treatment.  The Allowed Secured Class 2 Claim Holder shall retain its liens until such time as it is paid in accordance with terms of this plan.

        4.2.3   <u>Impairment</u>.  The Class 2 Claim is unimpaired.

    4.3      Class 3.  <u>Allowed Secured Claim of ARC Products, Inc</u>.

        4.3.1   <u>Classification</u>.  Class 3 consists of the Allowed Secured Claim of ARC Products, Inc. secured by a subordinated lien on Debtors' Property and proceeds thereof.  ARC has asserted a claim in the amount of $1,125,809.64.

        4.3.2   <u>Treatment</u>. The Allowed Class 3 Secured Claim of ARC shall be paid within fourteen (14) days after the Closing Date, the value of its secured claim from the remaining Net Sales Proceeds, after payment of Allowed Administrative Claims, Class 1 Claims and Class 2 Claims as provided in Articles III and IV of this Plan.   To the extent there is a deficiency balance due and owing, it shall be treated as a Class 5 General Unsecured Claim.

        4.3.3   <u>Impairment</u>.  The Class 3 Claim is impaired.

    4.4      Class 4.  <u>Other Allowed Secured Claims</u>.

        4.4.1   <u>Classification</u>.  Class 4 consists of all Allowed Secured Claims not included in Class 1, Class 2 or Class 3.

        4.4.2   <u>Treatment</u>.  Allowed Class 4 Other Allowed Secured Claims, shall, on the later of fourteen (14) business days after the Effective Date; fourteen (14) days after the Closing Date; or fourteen (14) business days after a Final Order allowing the Allowed Secured Claim, receive the following treatment: (i) surrender the collateral to the Holder of the Allowed Secured Claim; or (ii) provide such other treatment as may be agreed between the Holder of such Claim and the Debtors.  To the extent there is a deficiency balance due and owing, it shall be treated as Class 5 Claim.

        4.4.3   <u>Impairment</u>.  The Class 4 Claims are impaired.

    4.5      Class 5.  <u>Allowed General Unsecured Claims</u>.

        4.5.1   <u>Classification</u>.  Class 5 consists of the Allowed General Unsecured Claims against the Debtors.

        4.5.2   <u>Treatment</u>.  Allowed Class 5 General Unsecured Claims shall receive a Pro Rata share of remaining Net Sales Proceeds, after payment of Allowed Administrative Claims, Allowed Class 1 Claims, Allowed Class 2 Claims, Allowed Class 3 Claims, Allowed Class 4 Claims (to the extent collateral is not surrendered to the Holder of a Class 4 claim), and Allowed Priority Claim as provided in Articles III and IV of this Plan.

        4.5.3   <u>Impairment</u>.  The Class 5 Claims are impaired.

    4.6     Class 6.  <u>Allowed Interests of Equity Holders</u>.

        4.6.1   <u>Classification</u>.  Class 6 consists of the Allowed Interests of Equity Holders of the Debtors.

        4.6.2   <u>Treatment</u>. Unless Allowed Class 5 General Unsecured Claims are paid in full, Equity Interest in the Debtors shall receive no distribution or any property under the Plan on account of said Interests.  Said Interests shall be cancelled.  If the Allowed Class 5 General Unsecured Claims are paid in full and there is cash remaining it shall be distributed to the Holder of Allowed Equity Interests on a pro rata basis.

        4.6.3    <u>Impairment</u>.  The Class 6 Interests of Equity Holders are impaired.

    4.7     Class 7.  <u>Allowed Interests of Warrant Holders</u>.

        4.7.1   <u>Classification</u>.  Class 7 consists of the Allowed Interests of Warrant Holders.

        4.7.2   <u>Treatment</u>.  Allowed Interests of Warrant Holders shall receive no distribution or any property under the Plan on account of said Interests.  Said Interests shall be cancelled.

        4.7.3   <u>Impairment</u>.  The Class 7 Interests are impaired.

## ARTICLE 5
## VOTING OF CLAIMS AND INTERESTS

    5.1     Classes 3, 4, 5, and 6 are impaired and therefore are entitled to vote on this Plan. Accordingly, the acceptances of these Classes of Claims and Interests must be solicited.  Classes 1 and 2 are unimpaired and deemed to have accepted.  Class 7 is receiving nothing and is deemed to have rejected.

## ARTICLE 6
## SALE OF ASSETS PURSUANT TO AUCTION

    6.1    <u>Sale of Property</u>.  The Debtors shall conduct an Auction prior to the hearing on confirmation of the Plan to sell substantially all assets of the Debtors.   The Debtors shall seek approval of a Bidding Procedures Order to establish the procedures for the Auction.  After the entry of the Confirmation Order and the Sale Approval Order, the sale of the Property to the Successful Bidder, shall be consummated at the Closing pursuant to Sections 363, 1123, 365 and 1146(c) of the Bankruptcy Code, as applicable.  The Sale Approval Order and the Confirmation Order shall contain such terms and provisions as are necessary to effectuate the sale of the Property.  The Confirmation Order or the Sale Approval Order shall authorize and direct the Debtors to take all actions and steps necessary to consummate the sale of the Property.

    6.2    <u>Closing</u>.  The Closing of the sale shall be consummated within fourteen (14) days after the entry of the Confirmation Order or the Sale Approval Order (the "Closing Date").

6.3     <u>Release of Liens</u>.  At the Closing of the sale of the Property, all holders of Liens on the Property shall release their respective Liens upon the payment as provided in this Plan, and such holders shall execute any instruments reasonably requested to confirm and/or effectuate such release.  Liens shall attach to the Net Sale Proceeds in the same priority as they previously attached to the property.  Any unperfected liens, equitable liens, or other rights to royalties (whether or not in the nature of a lien) or any claims against the Property *in rem* are extinguished in the property and will attach only to the proceeds of sale.

6.4     <u>Sale Free and Clear</u>.  Upon Closing, all right, title and interest of the Debtors and its Estates in and to the Property shall vest in the Purchaser free and clear of all Claims, Liens, encumbrances, interests, restrictions, easements, leases, tenancies, agreements of sale and other title objections.  This specifically includes any claims to the intellectual property of the debtor by those claiming interest through royalty agreements, liens, unperfected liens, equitable liens, or otherwise.  All claims against the Property will attach to the proceeds of sale thereof in the same priority and amount as existed on the petition date.

6.5     <u>Net Sales Proceeds</u>.  The Net Sales Proceeds shall be utilized to make distributions as provided under this Plan.

6.6     <u>Credit Bid</u>.  Hillair shall have the right to credit bid at the Auction.

# ARTICLE 7
## MEANS FOR EXECUTION OF PLAN

7.1     <u>Funding of Plan</u>.  The source of funds to achieve consummation of and carry out the Plan shall be existing Cash and the Net Sales Proceeds, which are to be utilized to satisfy all Claims in order of priority under the Plan.  Intercompany Claims, meaning each of every claim each Debtor has against the other Debtor or an affiliated entity, will not receive any distributions and shall be of no force or effect as of the Effective Date

7.2     <u>Payment of Amerisource DIP Financing and Release</u>.  Amerisource DIP Financing shall be paid from the accounts receivable purchased from the Debtors, along with any funds held in reserve pursuant to the Amerisource DIP Financing Agreement.  Any remaining excess funds held by Amerisource, after payment in full of the Amerisource DIP Financing in accordance with the agreement, shall be distributed to the Debtor and utilized to fund the provisions of this Plan.  Any Allowed deficiency balance which may result after collection of accounts receivable shall be treated as an administrative claim in accordance with the terms of the Amerisource DIP Financing Order.  No later than the Closing Date, Amerisource shall release its lien on non-owned collateral of the Debtors.

7.3     <u>Release by Transfac</u>. Transfac retained a lien on Debtors' assets to secure payment of its debt.  Transfac has been paid the full amount of its Allowed obligation.  Accordingly, no later than the Closing Date, Transfac shall release its lien on collateral of the Debtors.

7.4     <u>Disbursing Agent</u>.  The Debtors shall act as the Disbursing Agent.  If the Debtors choose not to act as the Disbursing Agent, then it shall designate a substitute.

7.5    Exclusive Rights and Duties of the Disbursing Agent.  The duties of the Disbursing Agent shall be as follows:

   7.5.1    Distribution to Creditors with Administrative and Priority Claims.  In accordance with Sections 3.2 and 3.3, the Disbursing Agent shall pay the Administrative Claims first out of Cash generated from operations and then from available Net Sales Proceeds; provided however, that all funds on deposit with professionals for the Debtors shall be used towards the payment of the Allowed Administrative Claims of those professionals.

   7.5.2    Distributions to Creditors with Allowed Claims.  The Disbursing Agent shall have the sole right and duty to make the distributions provided for hereunder as set forth in Article 4.

7.6    Powers of the Disbursing Agent.  The Disbursing Agent shall have full power and authority to do the following.

   7.6.1    The Disbursing Agent shall be authorized to make disbursements to Administrative and Priority Creditors in accordance with Article 3 and other Creditors in accordance with the priority scheme set forth in Article 4.

   7.6.2    The Disbursing Agent shall be authorized to file all reports required under law, including state and federal tax returns, and to pay all taxes incurred by the Bankruptcy Estate.

   7.6.3    The Disbursing Agent shall be authorized to take any and all actions, including the filing or defense of any civil actions or Claim objections necessary to accomplish the above.

   7.6.4    The Disbursing Agent shall be authorized to employ and pay reasonable fees and expenses of such attorneys, accountants, and other professionals, as may be deemed necessary to accomplish the above and shall be entitled to reserve sufficient Cash to pay the projected fees and costs to such Professionals on a post-confirmation basis, and shall be authorized to purchase insurance with such coverage and limits as are reasonably necessary, including covering liabilities incurred in connection with its service as Disbursing Agent.

   7.6.5    The Disbursing Agent may suspend distribution to any Creditor that has not provided the Disbursing Agent with its Federal Tax Identification number or social security number, as the case may be.

7.7    Presumption of Disbursing Agent's Authority.  In no case shall any party dealing with the Disbursing Agent in any manner whatsoever be obligated to see that the terms of his

engagement have been complied with, or be obligated or privileged to inquire into the necessity or expediency of any act of the Disbursing Agent, or to inquire into any other limitation or restriction of the power and authority of the Disbursing Agent, but as to any party dealing with the Disbursing Agent in any manner whatsoever in relation to the assets, the power of the Disbursing Agent to act or otherwise deal with said property shall be absolute except as provided under the terms of the Plan.

    7.8    <u>Limitation on Disbursing Agent's Liability</u>.

    7.8.1    Except to the extent provided for in Section 7.7.2 below, no recourse shall ever be had directly or indirectly against the Disbursing Agent personally or against any employee of the Disbursing Agent by legal or equitable proceedings or by virtue of any statute or otherwise, nor upon any promise, contract, instrument, undertaking, obligation, covenant or agreement whatsoever executed by the Disbursing Agent pursuant to this Plan, or by reason of the creation of any indebtedness by the Disbursing Agent for any purpose authorized by the Plan, it being expressly understood and agreed that all such liabilities, covenants and agreements of the Disbursing Agent or any such employee, whether in writing or otherwise shall be enforceable only against and be satisfied only out of the assets of the Bankruptcy Estate and every undertaking, contract, covenant or agreement entered into in writing by the Disbursing Agent shall provide expressly against the personal liability of the Disbursing Agent.

    7.8.2    The Disbursing Agent shall not be liable for any act the Disbursing Agent may do or omit to do as Disbursing Agent hereunder while acting in good faith and in the exercise of the best judgment of the Disbursing Agent and the fact that such act or omission was advised, directed or approved by an attorney acting as attorney for the Disbursing Agent, shall be evidence of such good faith and best judgment; nor shall the Disbursing Agent be liable in any event except for gross negligence or willful default or misconduct of the Disbursing Agent.

    7.9    <u>Establishment and Maintenance of Disputed Claims Reserve</u>:

    7.9.1    Distributions made in respect of any Disputed Claims shall not be distributed, but shall instead be deposited by the Disbursing Agent into an interest-bearing account styled "Disputed Claims Reserve." The funds in this account shall be held in trust for the benefit of the Holders of all Disputed Claims.

    7.9.2    Unless and until the Bankruptcy Court shall determine that a good and sufficient reserve for any Disputed Claim is less than the full amount thereof, the calculations required by the Plan to determine the amount of the distributions due to the Holders of Allowed Claims and to be reserved for Disputed Claims shall be made as if all Disputed Claims

were Allowed Claims in the full amount claimed by the Holders thereof. No payment or distribution shall be made with respect to any Claim to the extent it is a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim.

7.9.3    At such time as a Disputed Claim becomes an Allowed Claim the distributions due on account of such Allowed Claim and accumulated by the Debtors (including the Pro Rata share of any dividends or interest earned in respect of such distributions) shall be released from the account and paid by the Debtors to the Holder of such Allowed Claim.

7.9.4    At such time as any Disputed Claim is finally determined not to be an Allowed Claim, the amount on reserve in respect thereof shall be released from the account and distributed to other creditors with Allowed Claims in the order of priority set forth herein.

7.9.5    The Disbursing Agent shall not be required to withhold funds or consideration, designate reserves, or make other provisions for the payment of any Claims that have been Disallowed by a Final Order of the Bankruptcy Court as of any applicable time for distribution under the Plan, unless the Bankruptcy Court orders otherwise or unless the Court's order of disallowance has been stayed.

7.10   Delivery of Distributions.  Subject to Bankruptcy Rule 9010 and the provisions of the Plan, distributions to Holders of Allowed Claims shall be made at the address of each such Holder as set forth on the proofs of Claim filed by such Holders (or at the last known addresses of such a Holder if no proof of Claim or proof of Equity Interest is filed or if the Disbursing Agent has been notified in writing of a change of address), except as provided below.  If any Holder's distribution is returned as undeliverable, no further distributions to such Holder shall be made unless and until the Disbursing Agent is notified of such Holder's then current address, at which time all missed distributions shall be made to such Holder without interest.  Amounts in respect of undeliverable distributions shall be returned to the Disbursing Agent until such distributions are claimed.

7.11   Time Bar for Cash Payments.  Checks issued by the Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within six months after the date of issuance thereof.  Requests for reissuance of any check shall be made directly to the Disbursing Agent by the Holder of the Allowed Claim with respect to which such check originally was issued.  Any Claim in respect of such a voided check shall be made on or before the later of (a) the first anniversary of the Effective Date or (b) ninety (90) days after the date of reissuance of such check.  After such date, all Claims in respect of void checks shall be discharged and forever barred.

7.12   Unclaimed Property.  If any Person entitled to receive distributions under the Plan cannot be located within a reasonable period of time after the Effective Date, the distributions such Person would be entitled to receive shall be held by the Disbursing Agent in a segregated interest-bearing account styled ESP Petrochemicals/Resources Unclaimed Distribution.  If the Person entitled to any such distributions is located within six months after the Effective Date, such

distributions, together with any dividends and interest earned thereon, shall be paid and distributed to such Person.  If such Person cannot be located within such period, such distributions and any dividends and interest thereof shall such person shall have waived and forfeited his right to such distributions and such funds shall be distributed to creditors with Allowed Claim in the order of priority provided for herein.  Nothing contained in this Plan shall require the Debtors or the Disbursing Agent to attempt to locate such Person.  It is the obligation of each Person claiming rights under the Plan to keep the Debtors and/or the Disbursing Agent advised of current address by sending written notice of any changes to the Debtors and/or the Disbursing Agent.

  7.13 <u>Minimum Payment Fractional Dollars</u>. Any other provision of the Plan notwithstanding, no payments of less than $25 will be made to any creditor and no fractional dollars will be made to any Holder of an Allowed Claim.  Whenever any payment of a fraction of a dollar to any holder of an Allowed Claim would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest whole dollar (up or down).

  7.14 <u>Distribution Dates</u>.  Whenever any distribution to be made under the Plan is due on a day other than a Business Day, such distribution will instead be made, without penalty or interest, on the next Business Day.  The Bankruptcy Court shall retain power, after the Confirmation Date, to extend distribution dates for cause, upon motion and after notice and a hearing (as defined in Bankruptcy Code Section 102) to affected parties.

  7.15 <u>Bankruptcy Code Sections 508, 509, and 510</u>.  Distributions under the Plan will be governed by the provisions of Bankruptcy Code Sections 508, 509, or 510, where applicable.

  7.16 <u>Orders Respecting Claims Distribution</u>.  After confirmation of the Plan, the Bankruptcy Court shall retain jurisdiction to enter orders in aid of consummation of the Plan respecting distributions under the Plan and to resolve any disputes concerning distributions under the Plan.

  7.17 <u>Continued Operations</u>.  The Debtors will continue to operate post-confirmation until the Sale Approval Order is entered and final; thereafter operations shall continue solely in order to distribute the funds necessary to make payments to Creditors holding Claims in Classes 1 through 6 and to engage in the Claims resolution process as necessary.

  7.18 <u>Avoidance Actions</u>.  The Debtors retain the right, but not the requirement, to pursue all Avoidance Actions except those specifically released in this Plan.

  7.19 <u>Agreements, Instruments and Documents</u>.  All agreements, instruments and documents required under the Plan to be executed or implemented, together with such others as may be necessary, useful, or appropriate in order to effectuate the Plan shall be executed on or before the Effective Date or as soon thereafter as is practicable.

  7.20 <u>Further Authorization</u>.  The Debtors shall be entitled to seek such orders, judgments, injunctions, and rulings from the Bankruptcy Court, in addition to those specifically listed in the Plan, as may be necessary to carry out the intentions and purposes, and to give full effect to the provisions, of the Plan.  The Bankruptcy Court shall retain jurisdiction to enter such orders, judgments, injunctions and rulings.

## ARTICLE 8
### CRAMDOWN AND CLAIMS ALLOWANCE

8.1     In the event any Impaired Class rejects the Plan, the Debtors will seek to invoke the provisions of Section 1129(b) of the Bankruptcy Code and confirm the Plan notwithstanding the rejection of the Plan by any Class of Claims or Interests.

**IN THE EVENT ANY IMPAIRED CLASS REJECTS THE PLAN THE DEBTORS WILL SEEK TO INVOKE THE PROVISIONS OF 11 U.S.C. §1129(b) AND CONFIRM THE PLAN OVER THE REJECTION OF THE CLASS OR CLASSES.     THE TREATMENT AFFORDED EACH CREDITOR IN EACH CLASS IN THE EVENT OF A CRAMDOWN WILL BE THE SAME AS THAT PROVIDED FOR IN THE PLAN AS THE CASE MAY BE.**

8.2     <u>Allowance of Claims under the Plan</u>.  Allowance is a procedure whereby the Bankruptcy Court determines the amount and enforceability of Claims against the Debtors, if the parties cannot agree upon such allowance.  It is expected that the Debtors and/or the Disbursing Agent will file objections to Claims of Creditors, if any are deemed necessary, before and after confirmation of the Plan.  The Plan merely provides for payment of Allowed Claims, but does not attempt to pre-approve the allowance of any Claims.

8.3     <u>Objection Deadline</u>.  As soon as practicable, but in no event later than sixty (60) days after the Effective Date, unless extended by order of the Bankruptcy Court for cause, objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made.

8.4     <u>Prosecution of Objections</u>.  On and after the Effective Date, except as the Bankruptcy Court may otherwise order, the filing, litigation, settlement or withdrawal of all objections to Claims may be made by the Debtors and/or Disbursing Agent.

## ARTICLE 9
### DEFAULT

9.1     If any of the following events occur, the Debtors will be in breach of this Plan ("Default"):

9.1.1   Failure to pay any amount due under the Plan when due; or

9.1.2   Breach or violation of a material covenant or uncured default under the Plan, including failure to pay amounts due.

9.2     Should the Debtors be in breach or violation under the foregoing paragraph, or Default has occurred and thereafter the Debtors fail to remedy or resolve such breach within thirty (30) days from the date of receipt of written notice of such breach, violation or default, then any Creditor owed a distribution, which the Debtors have failed to make when due, at its option, may declare that the Debtors are in default of this Plan.

## ARTICLE 10
EXECUTORY CONTRACTS AND LEASES

10.1     Debtors shall assume and assign to the Successful Purchaser the Executory Contracts and Leases selected by Purchaser.  To the extent a default exists in any executory contract or lease to be assumed, the Successful Purchaser will cure the default, if any.

10.2     The Debtors shall reject all executory contracts and leases and all other such agreements, which are not expressly assumed in this Plan, or by the Purchaser, or have not been expressly assumed by prior Court order.

10.3     Any Claims arising from rejection of an executory contract or lease rejected as part of the confirmation of the Plan must be filed on or before 20 days from the Effective Date.  Any claims arising from rejection of an executory contract or lease prior to confirmation of the Plan must have been filed on or before the later of the Claims Bar Date or 20 days from the date such rejection became effective.  Otherwise, such Claims are forever barred and will not be entitled to share in any distribution under the Plan.  Any Claims arising from rejection, if timely filed and allowed, will be paid as Class 5 Claims.

10.4     Nothing in this Plan, any attachment thereto, any document executed or delivered in connection with the Plan, shall be deemed to create any obligation or liability with respect to any executory contract or unexpired lease on the part of the Debtors or other Person that is not presently liable thereon.

## ARTICLE 11
MODIFICATION OF THE PLAN

11.1     The Debtors may propose amendments and modifications of this Plan through the Confirmation Date with leave of the Bankruptcy Court upon appropriate notice.  After the Confirmation Date, the Debtors may, with approval of the Bankruptcy Court, so long as it does not materially or adversely affect the interests of the Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the intent of this Plan.  After the Confirmation Date, the Debtors may, with approval of the Bankruptcy Court, modify the Plan as to any Class, even though such modification materially affects the rights of the Creditors or Interest Holders in such Class; provided, however, that such modifications must be accepted as to Classes of Creditors by at least sixty-six and two-thirds percent (66-2/3%) in amount of Allowed Claims voting in each such Class and fifty-one percent (51%) in number of Allowed Claims voting in such Class, and as to Classes of Interest Holders by at least sixty-six and two-thirds percent (66-2/3%) in amount of Allowed Interests voting in each such Class; and provided, further, that additional disclosure material needed to support such modification shall be approved by the Bankruptcy Court in the manner consistent with Section 1125 of the Bankruptcy Code and Rule 3017 of the Federal Rules of Bankruptcy Procedure.  With respect to all proposed modifications to the Plan both before and after confirmation, the Debtors shall comply with the requirements of Section 1127 of the Bankruptcy Code.

## ARTICLE 12
## CONDITIONS PRECEDENT

12.1 <u>Conditions to Confirmation</u>. Confirmation of the Plan shall not occur and the Bankruptcy Court shall not enter the Confirmation Order unless all of the requirements of the Bankruptcy Code for confirmation of the Plan with respect to the Debtors shall have been satisfied. In addition, confirmation shall not occur, the Plan shall be null and void and of no force and effect, and the Plan shall be deemed withdrawn unless the Court shall have entered all orders (which may be orders included within the Confirmation Order) required to implement the Plan.

12.2 <u>Waiver and Nonfulfillment of Conditions to Confirmation</u>. Nonfulfillment of any condition to confirmation of the Plan may be waived only by the Debtors. In the event that the Debtors determine that the conditions to the Plan's confirmation which it may waive cannot be satisfied and should not, in its discretion, be waived, the Debtors may propose a new plan, may modify this Plan as permitted by law, or may request other appropriate relief.

12.3 <u>Confirmation Order Provisions for Pre-Effective Date Actions</u>. The Confirmation Order shall empower and authorize the Debtors to take or cause to be taken, prior to the Effective Date, all actions which are necessary to enable it to implement the provisions of the Plan and satisfy all other conditions precedent to the effectiveness of the Plan.

12.4 <u>Conditions to the Effective Date</u>. The following are conditions precedent to the effectiveness of the Plan: (i) the Plan is confirmed and the Bankruptcy Court shall have entered the Confirmation Order and the Sale Approval Order both of which shall have become Final Orders; (ii) Debtors do not withdraw the Plan at any time prior to the Effective Date; (iii) the Closing shall have occurred; and (iv) the Debtors shall have sufficient Cash on hand to make the initial payments and distributions required under the Plan.

12.5 <u>Waiver and Nonfulfillment of Conditions to Effective Date</u>. Nonfulfillment of any condition set forth in the immediately foregoing paragraph of the Plan may be waived only by the Debtors. Moreover, any waiver of the requirement of a Final Order must be also agreed to in writing by the ultimate purchaser of the stock or assets. In the event that the Debtors determine that the conditions to the Plan's Effective Date set forth in the immediately foregoing paragraph of this Plan cannot be satisfied and should not, in their sole discretion, be waived, the Debtors may propose a new plan, may modify this Plan as permitted by law, or may request other appropriate relief.

## ARTICLE 13
## JURISDICTION OF THE BANKRUPTCY COURT

13.1 Notwithstanding entry of the Confirmation Order or the Effective Date having occurred, the Bankruptcy Court shall retain exclusive jurisdiction of this case after the Confirmation Date with respect to the following matters:

13.1.1 To allow, disallow, reconsider (subject to Bankruptcy Code Section 502(j) and the applicable Bankruptcy Rules) Claims and to hear and determine any controversies pertaining thereto;

13.1.2  To estimate, liquidate, classify or determine any Claim against the Debtors, including claims for compensation or reimbursement;

13.1.3  To resolve controversies and disputes regarding the interpretation and implementation of the Plan, including entering orders to aid, interpret or enforce the Plan and to protect the Debtors and any other entity having rights under the Plan as may be necessary to implement the Plan;

13.1.4  To hear and determine any and all applications, contested matters, or adversary proceedings arising out of or related to this Plan or this case or as otherwise might be maintainable under the applicable jurisdictional scheme of the Bankruptcy Code prior to or after confirmation and consummation of the Plan whether or not pending on the Confirmation Date;

13.1.5  To enforce, interpret and resolve any disputes regarding the Auction of the Property, and the sale resulting therefrom (as well as any Sale Approval Order that is entered);

13.1.6  To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

13.1.7  To liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any contingent or unliquidated Claim;

13.1.8  To adjudicate all Claims to any lien on any of the Debtors' assets;

13.1.9  To hear and determine matters concerning state, local and federal taxes pursuant to Sections 346, 505, 525 and 1146 of the Bankruptcy Code;

13.1.10  To correct any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan or to modify the Plan as provided by applicable law;

13.1.11  To determine all questions and disputes regarding title to assets of the Debtors or of the Bankruptcy Estates, as may be necessary to implement the Plan;

13.1.12  To enforce and to determine actions and disputes concerning the releases contemplated by the Plan (and any Sale Approval Order that may be entered), and to require persons holding liens to release liens or Claims in compliance with the Plan and any Sale Approval Order that may be entered;

13.1.13  To fix the value of collateral in connection with determining Claims;

13.1.14  To enter any order pursuant to Bankruptcy Code Section 505 or otherwise to determine any tax of the Debtors, whether before or after confirmation, including to determine any and all tax effects of the Plan;

13.1.15  To hear and determine any action or controversy by holders of Allowed Class 5 Claims; and

13.1.16 To enter a final decree closing the Case and making such final administrative provisions for the case as may be necessary or appropriate.

13.2   Failure of the Bankruptcy Court to Exercise Jurisdiction.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under or related to the Chapter 11 case, including the matters set forth in Section 13.1 of the Plan, this Article 13 shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE 14
### EFFECT OF CONFIRMATION

14.1   Binding Effect.  As provided for in Section 1141(d) of the Bankruptcy Code, the provisions of the Plan shall bind the Debtors, any entity acquiring property under the Plan and any Creditor, Equity Holder, or shareholder of the Debtors, whether or not the Claim or Interest of such Creditor or Equity Holder is impaired under the Plan and whether or not such Creditor or Equity Holder has accepted the Plan.  After confirmation, the property dealt with by the Plan shall be free and clear of all Claims and Interests of Creditors and Equity Holders, except to the extent as provided for in the Plan as the case may be.  The Confirmation Order shall contain an appropriate provision to effectuate the terms of this paragraph 14.1.

14.2   Satisfaction of Claims and Interests.  Holders of Claims and Interests shall receive the distributions provided for in this Plan, if any, in full settlement and satisfaction of all such Claims, and any interest accrued thereon, and all such Interests.

14.3   Vesting of Property.  Except as otherwise expressly provided in the Plan or the Confirmation Order, pursuant to Section 1141(b) of the Bankruptcy Code, upon the Effective Date, all Excluded Property of the Bankruptcy Estate shall vest in the Debtors free and clear of all Claims, liens, encumbrances, charges or other Interests of Creditors and Interest Holders except for the interest of the Main Street Lenders.

14.4   Discharge.  Pursuant to Section 1141(d) of the Bankruptcy Code, upon the Effective Date, the Debtors shall be discharged from any debt that arose before the date of such confirmation, and any debt of a kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not a proof of the Claim based on such debt is filed or deemed filed under Section 501 of this title; such Claim is allowed under Section 502 of this title; or the Holder of such Claim has accepted the Plan.

14.5   Injunction.  **The Confirmation Order shall include a permanent injunction prohibiting the collection of Claims in any manner other than as provided for in the Plan. All Holders of Claims shall be prohibited from asserting against the Debtors or any of its assets or properties, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not such Holder filed a Proof of Claim.  Such prohibition shall apply whether or not (a) a proof of Claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code; or (c) the Holder of a Claim based upon such debt has accepted the Plan.**

**"Claims" shall include, but not be limited to, all direct claims of creditors and equity interest holders against the Debtor, claims derivative of the Debtors, shareholder claims against the Debtor, and all claims that are common to all creditors or equity holders.**

14.6     Preservation of Setoff and Recoupment Rights.  In the event that the Debtors have a Claim of any nature whatsoever against the Holders of Claims, the Debtors may, but is not required to setoff or recoup against the Claim (and any payments or other distributions to be made in respect of such Claim hereunder), subject to the provisions of Section 553 of the Bankruptcy Code.  Neither the failure to setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors of any claim that the Debtors have against the Holder of Claims. Neither this provision nor the injunctive provision of the Confirmation Order shall impair the existence of any right of setoff or recoupment that may be held by a Creditor herein; provided that the exercise of such right shall not be permitted unless the Creditor provides the Debtors with written notice of the intent to effect such setoff or recoupment.  If the Debtors or the Disbursing Agent, as applicable, object in writing within twenty (20) business days following the receipt of such notice, such exercise shall only be allowed upon order of the Bankruptcy Court.  In the absence of timely objection, the Creditor may implement the proposed setoff or recoupment against the claim held by the Bankruptcy Estate.

14.7     Releases.  On the Effective Date and pursuant to Section 1123(b)(3)(A) of the Bankruptcy Code, the Debtors, and to the maximum extent provided by law, its agents, release and forever discharge all claims, including acts taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into or any other act taken or entitled to be taken in connection with the Plan or this case against the following, whether known or unknown:

14.7.1 ESP Petrochemicals, Inc., ESP Resources, Inc., their current board members and officers, including David Dugas, Charles L. Johnson and the Debtors officer and directors (collectively "Insider Released Parties") in connection with any and all claims and causes of action arising on or before the Confirmation Date that may be asserted by or on behalf of the Debtors or the Bankruptcy Estates.

14.7.2  The release of these Insider Released Parties shall be conditioned upon the occurrence of the Effective Date.

14.7.3  The Debtors' Professionals will be released from any and all claims and liabilities other than gross negligence and willful misconduct or except as otherwise provided under the Professional Code of Responsibility.

14.7.4  Exculpation.  Neither the Debtors, the Insider Released Parties, nor any of their respective present members, officers, directors, or employees shall have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Chapter 11 Case, the formulation, negotiation, or implementation of the Plan, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the

consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions which are the result of fraud, gross negligence, or willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

14.8    <u>Lawsuits</u>.  On the Effective Date, all lawsuits, litigations, administrative actions or other proceedings, judicial or administrative, in connection with the assertion of Claims against any of the Debtors except proof of Claim and/or objections thereto pending in the Bankruptcy Court shall be dismissed as to each of the Debtors.  Such dismissal shall be with prejudice to the assertion of such Claim in any manner other than as prescribed by the Plan.  **All parties to any such action shall be enjoined by the Bankruptcy Court by the Confirmation Order from taking any action to impede the immediate and unconditional dismissal of such actions.**  All lawsuits, litigations, administrative actions or other proceedings, judicial or administrative, in connection with the assertion of a claim(s) by the Debtors or any entity proceeding in the name of or for the benefit of the Debtors against a person shall remain in place only with respect to the claim(s) asserted by the Debtors or such other entity, and shall become property of the Post-Confirmation Debtor(s) to prosecute, settle or dismiss as it sees fit.

14.9    <u>Insurance</u>.  Confirmation and consummation of the Plan shall have no effect on insurance policies of the Debtors in which the Debtors or any of the Debtors' representatives or agents is or was the insured party; the Debtors shall become the insured party under any such policies without the need of further documentation other than the Plan and entry of the Confirmation Order.  Each insurance company is prohibited from denying, refusing, altering or delaying coverage on any basis regarding or related to the Debtors' bankruptcy, the Plan or any provision within the Plan.

14.10    <u>U.S. Trustee Fees</u>.  The Debtors shall timely pay post-confirmation quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time as the Bankruptcy Court enters a final decree closing this Chapter 11 case, or enters an order either converting this case to a case under Chapter 7 or dismisses the case.  After confirmation, the Debtor shall file with the Bankruptcy Court and shall transmit to the United States Trustee a true and correct statement of all disbursements made by the Debtor for each month or portion thereof, that these Chapter 11 cases remains open in a format prescribed by the United States Trustee.

14.11    <u>Abandoned Property</u>.  Any and all property whose abandonment is or has been approved by the Court pursuant to the Bankruptcy Code shall remain abandoned forever; shall not thereafter be deemed to be property of the Debtors or of any successor to the Debtors; shall not at any time re-vest in the Debtors, and shall not otherwise, whether by conveyance or otherwise, ever become the property of the Debtors.

14.12    <u>Term of Stays</u>.  Except as otherwise provided in the Plan, the stay provided for in this case pursuant to Bankruptcy Code Section 362 shall remain in full force and effect until the Effective Date.

14.13    <u>Government Licenses</u>.  A governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, the Debtors, or another Person with whom

the Debtors have been or is associated or affiliated, solely because of the commencement, continuation, or termination of the case or because of any provision of the Plan or the legal effect of the Plan, and the Confirmation Order will constitute an express injunction against any such discriminatory treatment by a governmental unit.  Moreover, a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to the Debtors based upon any requirement that the Debtors place a bond or other surety obligation with such governmental unit as a condition of receipt of such a license, permit, charter, franchise, or other similar grant to the Debtors.  All licenses, permits, charters, franchises, or other similar grants to the Debtors are hereby retained by (which retention is without the assumption of any liabilities arising prior to the Effective Date which liabilities arise out of such license, permit, charter, franchise or similar grant) the Debtors without the need for further application or approval by any governmental unit.

## ARTICLE 15
### MISCELLANEOUS PROVISIONS

15.1    <u>Corporate Authority</u>.  All actions and transactions contemplated under the Plan shall be authorized upon confirmation of the Plan without the need of further board or stockholder resolutions, approval, notice or meetings, other than the notice provided by serving this Plan on all known Creditors of the Debtors, all Interest Holders, and all current directors of the Debtors.

15.2    <u>Documentation</u>.  The Debtors, all Creditors and other parties in interest required to execute releases, termination statements, deeds, bills of sale or other documents required by the Plan, shall be ordered and directed to execute such documents as are necessary in order to effectuate the terms of this Plan.  The Bankruptcy Court may determine that the failure of any party to execute a required document shall constitute contempt of the Bankruptcy Court's Confirmation Order, which shall require such documents to be executed in accordance with the terms of the Plan and the Confirmation Order.  On the Effective Date, all documents and instruments contemplated by the Plan not requiring execution and delivery prior to the Confirmation Date shall be executed and delivered by the Debtors, and Creditors, as the case may be.  All Documents shall be consistent with the terms of the Plan and shall otherwise be subject to approval as to form by all respective counsel.

15.3    <u>Integration Clause</u>.  This Plan is a complete, whole, and integrated statement of the binding agreement between the Debtors, Creditors, Equity Interests and the parties-in-interest upon the matters herein.  Parol evidence shall not be admissible in an action regarding this Plan or any of its provisions.

15.4    <u>Primacy of the Plan and Confirmation Order or the APA</u>.  To the extent of any conflict or inconsistency between the provisions of the Plan on the one hand, and the Confirmation Order on the other hand, the provisions of the Confirmation Order shall govern and control.  To the extent of any conflict or inconsistency between the provisions of the APA, the Confirmation Order, and the Sale Approval Order, the provisions of the Sale Approval Order shall govern and control.  The Sale Approval Order is hereby incorporated herein by reference.

15.5    <u>Severability</u>.  Should the Bankruptcy Court determine that any provision of the Plan is unenforceable either on its face or as applied to any Claim or Equity Interest or transaction, the proponent may modify the Plan in accordance with Article 13 hereof so that such provision shall

not be applicable to the Holder of any Claim or Equity Interest. Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the resolicitation of any acceptance or rejection of the Plan.

15.6 <u>No Admission</u>. Neither the filing of the Plan, nor Disclosure Statement, nor any statement or provision contained herein, nor the taking by the Debtors of any action with respect to the Plan shall (i) be or be deemed to be an admission against interest and (ii) until the Effective Date, be or be deemed to be a waiver of any rights which the Debtors may possess against any other party. In the event that the Effective Date does not occur, neither the Plan, Disclosure Statement nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of the Debtors' case.

15.7 <u>Bankruptcy Restrictions</u>. From and after the Effective Date, the Debtors shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code or Rules (e.g., section 363, section 364, rule 9019), the Bankruptcy Court, or the United States Trustee's guidelines. The Disbursing Agent may, on behalf of the Debtor, compromise Claims and/or controversies post-Effective Date without the need of notice or Bankruptcy Court approval. No monthly operating reports will be filed after the Effective Date; however, the Disbursing Agent shall provide the U.S. Trustee such financial reports as provided above and as the U.S. Trustee may reasonably request until the entry of a final decree.

15.8 <u>Governing Law</u>. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or the law of the jurisdiction of organization of any entity, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan or the Chapter 11 case, including the documents executed pursuant to the Plan.

15.9 <u>Closing of Case</u>. As soon as the Debtors have performed their obligations under the Plan it shall seek the entry of an Order of the Court closing the case.

15.10 <u>Successors and Assigns</u>. The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

15.11 <u>Notices</u>. All notices or requests in connection with the Plan shall be in writing and given by mail addressed to:

> Charles L. Johnson
> ESP Petrochemicals/Resources Disbursing Agent
> c/o TST Accounting LLC
> 11625 Spring Cypress Road Ste E
> Tomball, TX 77377

with copies to:

EDWARD L. ROTHBERG
HOOVER SLOVACEK LLP
5051 Westheimer, Suite 1200
Galleria Tower II
Houston, Texas 77056

All notices and requests to Persons holding any Claim or Interest in any Class shall be sent to them at their last known address or to the last known address of their attorney of record in the case. Any such holder of Claim or Interest may designate in writing any other address for purposes of this section, which designation will be effective upon receipt by the Debtors.

15.12   Validity and Enforceability.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.  Should any provision in this Plan be determined by the Court or any appellate court to be unenforceable following the Effective Date, such determination shall in no way limit the enforceability and operative effect of any and all other provisions of this Plan.

15.13   Plan Supplement.  Any and all exhibits or schedules not filed with the Plan shall be contained in a Plan Supplement to be filed within ten (10) days of the Confirmation Hearing.

[INTENTIONALLY LEFT BLANK]

Respectfully submitted December 5, 2016:

ESP PETROCHEMICALS, INC.

*Charles L. Johnson with permission by /s/ Melissa A. Haselden*

By:_____
            Charles L. Johnson, Chief Restructuring Officer

ESP RESOURCES, INC.

*Charles L. Johnson with permission by /s/ Melissa A. Haselden*

By:_____
            Charles L. Johnson, Chief Restructuring Officer

**HOOVER SLOVACEK, LLP**
Edward L. Rothberg
State Bar No. 17313990
Melissa A. Haselden
State Bar No. 00794778
5051 Westheimer, Suite 1200
Galleria Tower II
Houston, Texas 77056
Telephone: (713) 977-8686
Facsimile: (713) 977-5395

***ATTORNEYS FOR DEBTORS***