IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| ESP PETROCHEMICALS, INC. | § | CASE NO.  16-60020-V2-11 |
| ESP RESOURCES, INC. | § | CASE NO.  16-60021-V2-11 |
| | § | |
| | § | Jointly Administered Under |
| Debtors | § | Case No. 16-60020-V2-11 |
| | § | Judge David R. Jones |

DEBTORS' MOTION TO ASSUME UNEXPIRED LEASE OF
NONRESIDENTIAL REAL PROPERTY WITH
JMA ENTERPRISES, INC. EFFECTIVE DECEMBER 5, 2016
************************************************************************

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

ESP Petrochemicals, Inc. ("ESPP") and ESP Resources, Inc. ("ESPI") (collectively "ESP" or "Debtors") hereby moves this Court, pursuant to 11 U.S.C. § 365(a), for an order authorizing the assumption of the unexpired lease of nonresidential real property with JMA Enterprises, Inc. ("JMA" or "Landlord"), located at 1108 Albrad Street, Suite A, Pharr, Texas ("JMA Enterprises Lease") effective December 5, 2016.   The grounds for this motion are as follows:

## I.  <u>Summary of Relief</u>

1.       The deadline for Debtors to assume or reject leases of nonresidential real property expires December 5, 2016.  By this motion, Debtors seek to assume its lease with JMA Enterprises, effective December 5, 2016.

2.       Debtors currently conduct operations at the Leased Premises in Pharr, Texas which is subject to the Lease with JMA Enterprises.  This location is an essential location to the Debtors operations.  The lease term expires in March 2017 and the Debtors do not contemplate vacating the premises prior to the lease termination date.  Further, the monthly rent associated with the Lease is reasonable.   The Lease provides the Debtors with the option of another three (3) year renewal which may be attractive to a purchaser of Debtors assets in connection with the contemplated sale of Debtors' assets.

3.       A prepetition balance of $2940.00 is owed to the Landlord with respect to the Lease.  The Debtors will pay this cure payment to the Landlord within fourteen (14) days of the Effective Date of a confirmed Chapter 11 plan.

## II.  <u>JURISDICTION & VENUE</u>

4.       This Court has jurisdiction by virtue of 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1), (b)(2)(A) and (M). Venue is proper in this district pursuant to 28 U.S.C. § 1408(1) because the Debtors' maintain offices located in this district for more than 180 days preceding the filing of these bankruptcy cases.

## III.  <u>FACTUAL BACKGROUND</u>

5.       Debtors each filed a voluntary petition under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") on March 10, 2016 (collectively "Petition Date").

6.      The Debtors continue to operate its business and manage its property as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

7.      No trustee or examiner has been appointed in the Debtors' bankruptcy cases.

8.      On April 13, 2016, an official committee of unsecured creditors was established.

9.      ESPI is a publically traded holding company, with no independent operations apart from its subsidiaries.  ESPP manufactures, distributes, markets and supplies specialty chemicals for a variety of oil and gas field applications.  Since the Petition Date, the Debtors have continued efforts to stabilize the business, including cultivating new business opportunities and implementing cost cutting measures. These measures have resulted in new sales opportunities and increased cash flow.   On July 22, 2016, the Court authorized the employment of Charles Johnson as CRO of the Debtors.  Since his engagement, Mr. Johnson has spent a significant amount of time stabilizing Debtors' operations, including closing locations, reducing staffing and implementing across the board pay reductions for all employees.  Mr. Johnson has also determined that it is in the best interests of the Debtors' estates to sell the assets through a plan and 363 sale process, including the possible assumption and assignment of various leases.

10.     Prior to the Petition Date, Debtors entered into a lease of nonresidential real property with JMA Enterprises ("Lease").  The Lease is a thirty-sixty (36) month agreement for the lease of 6,000 square feet of industrial warehouse and office space of real property located at 1108 Albrad Street, Suite A, Pharr, Texas 78539 ("Leased Premises"), commencing March 15, 2011 and terminating March 31, 2014 with the renewal option for two additional three (3) year extensions at the then prevailing market rate.  To date, the Debtors have exercised one - three (3) extension of the Lease.

11.     The monthly base rent for the Leased Premises $2,400, plus associated charges. The Debtor is current in its post-petition obligations owed under the Lease.  A copy of the JMA Lease is attached hereto as **Exhibit "A."**

12.     The deadline for Debtor to assume or reject its lease of nonresidential real property is on or about December 5, 2016.  By this motion, the Debtor intends to assume the JMA Enterprises Lease.

13.     The Debtor's facilities at the Leased Premises are its only location in the area and are critical to Debtor's ability to maximize the value of its assets through a sale process.  It is likely that a potential purchaser may seek to maintain this location subsequent to an auction.

14.     Additionally, as of the Petition Date, the Debtors owed $2940.00 in connection with the unpaid prepetition rent and related charges due under the JMA Enterprises Lease ("Cure Amount").  This Cure Amount must be paid if the JMA Enterprises Lease is assumed.  The Debtor will pay this Cure Amount within fourteen (14) days after the Effective Date of a confirmed Chapter 11 plan.

## IV. LEGAL ARGUMENT AND BASIS FOR RELIEF

15.     By this Motion, the Debtors request authority to assume the JMA Enterprises Lease, effective December 5, 2016 and to pay the Cure Amount of $2940.00 within fourteen (14) days of the Effective Date of a confirmed Chapter 11 plan.

16.     The JMA Enterprises Lease qualifies as an "executory contract" under 11 U.S.C. §365 of the Bankruptcy Code because performance was still due on both sides as of the date of the petition.

17.     Section 365(a) of the Bankruptcy Code provides that the Debtor may, subject to court approval, assume or reject any executory contracts or unexpired lease of the debtor.  In

determining whether to approve the assumption or rejection of an executory contract or lease, courts generally employ as business judgment standard.  *See generally Richmond Capital Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303 (5th Cir. 1985).

18.     As part of its restructuring, the Debtor continues to operate at the Leased Premises.  The associated rent is reasonable and the Leased Premises are critical to Debtors' continued operations.  To move the Debtors' equipment to another location would involve significant costs and time which would create undue hardship for the Debtor.  Thus, in the Debtor's business judgment, the JMA Enterprises Lease, should be assumed effective December 5, 2016.

19.     The Debtor also seeks to pay the Cure Amount of $2940.00 within fourteen (14) days of the Effective Date of a confirmed Chapter 11 plan.

WHEREFORE, Debtors pray that the Court enter an order authorizing the assumption of the Lease with JMA Enterprises effective December 5, 2016 and grant such further relief as is just and proper.

DATED:  December 5, 2016

Respectfully submitted,

HOOVER SLOVACEK LLP

*/s/ Melissa A. Haselden*

By:_____
        EDWARD L. ROTHBERG
        State Bar No. 17313990
        MELISSA A. HASELDEN
        State Bar No. 00794778
        5051 Westheimer, Suite 1200
        Galleria Tower II
        Houston, Texas 77056
        Telephone: (713) 977-8686
        Facsimile: (713) 977-5395
        ATTORNEYS FOR DEBTORS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Motion to Assume Lease of Nonresidential Real Property with JMA Enterprises, Inc. was served on December 5, 2016 upon the parties below via the Court's ECF system and on December 6, 2016, to the parties listed below via U.S. First Class Mail:

**Via U.S. First Class Mail**
JMA Enterprises, Inc.
1309 Business Park Dr.
Mission, TX 78572

**16-60020 Notice will be electronically mailed to:**

John Akard, Jr on behalf of Creditor Industrial Chemicals, Inc.
johnakard@attorney-cpa.com, japccourtdocs@gmail.com

John T Banks on behalf of Creditor Karnes County
jbanks@pbfcm.com, jbanks@ecf.inforuptcy.com

Micheal W Bishop on behalf of Creditor IMI Market Street, LLC, a Delaware limited liability company
mbishop@grayreed.com

Jason S Brookner on behalf of Creditor Hillair Capital Investments, LP
jbrookner@grayreed.com, cpatterson@grayreed.com

Gary Wayne Coker on behalf of Creditor MidSouth Bank
bankruptcy@germer.com, melaniew@germer.com

Patrick D Devine on behalf of Creditor Baker Hughes Oilfield Operations, Inc.
pdevine@pdevinelaw.com

Patrick D Devine on behalf of Creditor Committee Official Committee of Unsecured Creditors
pdevine@pdevinelaw.com

Hector Duran on behalf of U.S. Trustee US Trustee
Hector.Duran.Jr@usdoj.gov

Lee Gordon on behalf of Creditor Pine Tree ISD
denise.gibson@mvbalaw.com;kim.morriss@mvbalaw.com;sonya.ragsdale@mvbalaw.com

Melissa Anne Haselden on behalf of Debtor ESP Petrochemicals, Inc.
Haselden@hooverslovacek.com,
haseldenbankruptcy@gmail.com,bankruptcy1@hooverslovacek.com,phelan@hooverslovacek.com

Melissa Anne Haselden on behalf of Joint Debtor ESP Resources, Inc.
Haselden@hooverslovacek.com,
haseldenbankruptcy@gmail.com,bankruptcy1@hooverslovacek.com,phelan@hooverslovacek.com

Timothy James Henderson on behalf of Interested Party BWC Management, Inc.
timjhenderson@msn.com

Courtney Hull on behalf of Creditor Texas Comptroller of Public Accounts
bk-chull@texasattorneygeneral.gov, sherri.simpson@texasattorneygeneral.gov

I Richard Levy on behalf of Creditor ARC Products, Inc.
levy@irlevylaw.com

Harold Norman May on behalf of Creditor Solstice Equipment, LLC
hap.may@may-firm.com

Curtis W McCreight on behalf of Debtor ESP Petrochemicals, Inc.
mccreight@hooverslovacek.com,
bankruptcy1@hooverslovacek.com;Mccreight.hsllp@gmail.com

Curtis W McCreight on behalf of Joint Debtor ESP Resources, Inc.
mccreight@hooverslovacek.com,
bankruptcy1@hooverslovacek.com;Mccreight.hsllp@gmail.com

Jason Matthew Medley on behalf of Interested Party Amerisource Funding, Inc.
jason.medley@leclairryan.com, jonathan.gold@leclairryan.com

R Christopher Naylor on behalf of Creditor Ford Motor Credit Company LLC
kimg@dntlaw.com

Trent L Rosenthal on behalf of Interested Party Transfac Capital, Inc.
trosenthal@rosenthallaw.com, nlamb@rosenthallaw.com

Edward L Rothberg on behalf of Debtor ESP Petrochemicals, Inc.
rothberg@hooverslovacek.com,
ELRbankruptcy@gmail.com,ray@hooverslovacek.com;hsllpbankruptcy@gmail.com

Edward L Rothberg on behalf of Joint Debtor ESP Resources, Inc.
rothberg@hooverslovacek.com,
ELRbankruptcy@gmail.com,ray@hooverslovacek.com;hsllpbankruptcy@gmail.com

Diane Wade Sanders on behalf of Creditor Hidalgo County
austin.bankruptcy@publicans.com

Diane Wade Sanders on behalf of Creditor Live Oak CAD
austin.bankruptcy@publicans.com

Diane Wade Sanders on behalf of Creditor Victoria County
austin.bankruptcy@publicans.com

Stephen Douglas Statham on behalf of U.S. Trustee US Trustee
stephen.statham@usdoj.gov

US Trustee
USTPRegion07.HU.ECF@USDOJ.GOV


/s/ Melissa A. Haselden
MELISSA A. HASELDEN

# INDUSTRIAL LEASE AGREEMENT

### Terms

| | |
|---|---|
| Date: | February 28, 2011 |
| Landlord: | JMA Enterprises, Inc. |
| Landlords Address: | |
| | 1309 Business Park Drive |
| | Mission, Texas, 78572 |
| | Hidalgo County |
| Tenant: | ESP Petro Chemicals, Inc. |
| Tenant's Address: | P.O. Box 640 |
| | Carencro, LA. 70520 |
| | 111 Lions Club Street |
| | Scott, LA. 70583 |

Premises

| | |
|---|---|
| Approximate square feet: | 6,000 – Square feet, of warehouse and office space I located on the real property more particularly described on Exhibit "A" (the premises). |
| Name of Building: | Albrad Subdivision |
| Street Address/Suite: | 1108 Albrad Street, Suite A |
| City, State, Zip: | Pharr, Texas 78539 |
| Base Rent (Monthly): | $2,400.00 (Two thousand four hundred dollars and zero cents) |
| Triple Net: | NNN (Expenses) currently estimated to be $ .09 cents per square ft. per month |
| Terms: | 36 month lease |
| Tenants Pro Rata Share: | 100% of 6000 sq ft. This includes taxes, insurance and common area of maintenance (NNN Expenses) |
| Property Improvement: | Refer to Exhibit "B" (Property Improvement/ drawing provided by ESP) |
| Renewal Options: | ESP PetroChemicals, Inc. has the option for two additional three (3) year extensions at the then prevailing market rate. |
| Possession Date: | March 15, 2011 |
| Commencement Date: | March 15, 2011 |
| Termination Date: | March 31, 2014 |

Industrial Lease
JMA Enterprises, Inc./ESP PetroChemicals, Inc.

**EXHIBIT A**

Amount of Liability Insurance

|  |  |
|---|---|
| Death/Bodily: | $1,000,000 |
| Property: | $1,000,000 |

## Definitions

"Rent" means Base Amount plus any other amounts of money due Landlord by Tenant.

"Landlord" means Landlord and its agents, employees, invitees, licensees, or visitors.

"Tenant" means Tenant and its agents, employees, invitees, licensees, or visitors.

"Essential Services" means water and utility connections reasonably necessary for occupancy of the Premises for the Use.

## Clauses and Covenants

### A.   Tenant agrees to –

1. Lease the Premises for the entire Term beginning on the Commencement Date and ending on the Termination Date.

2. Accept the Premises in their present condition "AS IS, " the Premises being currently suitable for Tenant's intended Use.

3. Obey all laws, ordinances, orders, and rules and regulations applicable to the use, condition and occupancy of the Premises, including the rules and regulations of the Premises adopted by Landlord.

4. Pay monthly, in advance, on the first day of the month, the Base Rent to Landlord at Landlord's Address.

5. Pay, as additional Rent, all other amounts due under this lease.

6. Pay a late charge of five (5%) percent of any Rent not received by Landlord by the tenth (10th) day of the month in which it is due.

7. Obtain and pay for all utility services used by Tenant and not provided by Landlord.  Tenant shall pay for electric and water.

8. Intentionally omitted.

9. Allow Landlord to enter the Premises to perform Landlord's obligations, inspect the Premises, and show the Premises to prospective purchasers or tenants.

10. Repair, replace, and maintain any part of the Premises that Landlord is not obligated to repair, replace, or maintain, reasonable wear excepted.  Tenant shall pay for light bulbs, routine air conditioning services, and plumbing stoppages caused by Tenant; these services should not include the replacement, repair, or cleaning of coils or the replacement or repair of the compressor(s); unless damage was caused by Tenant.

Industrial Lease
JMA Enterprises, Inc.'

11.    Keep the sidewalk, service ways, and loading areas adjacent to the Premises clean and unobstructed.

12.    Repair any damage to the Premises caused by Tenant.

13.    Submit in writing to Landlord any request for repairs, replacement, and maintenance that are the obligations of Landlord.

14.    Maintain public liability insurance for the Premises and the conduct of Tenant's business, naming Landlord as an additional insured, in the amounts stated in the lease.

15.    Maintain insurance on Tenant's personal property.

16.    Deliver certificates of insurance to Landlord before the Commencement Date and thereafter when requested.

17.    Indemnify, defend, and hold Landlord harmless from any loss, attorney's fees, court and other costs, or claims arising out of the Tenant's use of the Premises.

18.    If requested, deliver to Landlord a financing statement perfecting the security interest.

19.    Vacate the Premises and return all keys to the Premises on termination of this lease.

20.    Pay all costs caused by introducing materials, other than ordinary human waste, into the sanitary sewer system.

21.    Install and maintain any dilution tanks, holding tanks, settling tanks, sewer sampling devices, sand traps, grease traps, or other devices required by law for Tenant's Use of the sanitary sewer system.

22.    Intentionally omitted.

23.    On request, execute an estoppel certificate that states the Commencement Date and Termination Date of the lease, identifies any amendments to the lease, describes any rights to extend the Term or purchase rights, lists defaults by Landlord, and provides any other information reasonably requested.

B.    **Tenant agrees not to –**

1.    Use the Premises for any purpose other than that stated in the lease.

2.    Create a nuisance.

3.    Interfere with any other tenant's normal business operations or Landlord's management of the Premises.

4.    Permit any waste.

5.    Use the Premises in any way that is extra hazardous, would violate any applicable federal or state laws, would increase insurance premiums, or would void insurance on the Premises.

6.    Change Landlord's lock system.

Industrial Lease
JMA Enterprises, Inc./

7.    Alter the Premises without prior landlords written approval, which approval should not be unreasonably withheld.

8.    Allow a lien to be placed on the Premises.

9.    Assign this lease or sublease any portion of the Premises without Landlord's written consent, which consent should not be unreasonably withheld.

10.    Use the roof on the Premises.

11.    Place any signs on the Premises without Landlord's written consent, which should not be unreasonably withheld. All signs must comply with Expressway Business Park Oversight Committee requirements.

C.    Landlord agrees to –

1.    Lease to Tenant the Premises for the entire Term beginning on the Commencement Date and ending on the Termination Date.

2.    Obey all laws, ordinances, orders, and rules and regulations applicable to the use, condition any occupancy of the Premises.

3.    Repair, replace, and maintain the (a) roof, (b) foundation, (c) parking and common areas, and (d) structural soundness of the exterior walls, excluding windows, window glass, plate glass, and doors, (e) and those items specifically excluded in paragraph A.10.

4.    Insure the Premises against all risks of direct physical loss in an amount equal to at least ninety (90) percent of the full replacement cost of the Premises as of the date of the loss and liability; Tenant will have no claim to any proceeds of Landlord's insurance policy.

5.    Return the Security Deposit to Tenant, less itemized deductions, if any, within thirty (30) days after the termination of this lease.

D.    Landlord agrees not to –

1.    Interfere with Tenant's possession of the Premises as long as Tenant is not in default.

2.    Unreasonably withhold consent to a proposed assignment or sublease.

E.    Landlord and Tenant agree to the following:

1.    *Alterations.* Any physical additions or improvements to the Premises made by Tenant will become the property of Landlord. Landlord may require that Tenant, at termination of this lease and at Tenant's expense, remove any physical additions and improvements, repair any alterations, and restore the Premises to the condition existing at the Commencement Date, normal wear excepted.

2.    *Abatement.* Tenant's covenant to pay Rent and Landlord's covenants are independent. Except as otherwise provided, Tenant will not be entitled to abate Rent for any reasons.

Industrial Lease
JMA Enterprises, Inc.,

3.      *Release of Claims/Subrogation.*   Landlord and Tenant release each other from any claim, by subrogation or otherwise, for any damage to the Premises, the building, or personal property within the Premises, by reason of fire or the elements, regardless of cause, including negligence of Landlord or Tenant. This release applies only to the extent that it is permitted by law, the damage is covered by insurance proceeds, and the release does not adversely affect any insurance coverage.

4.      *Notice to Insurance Companies.*   Landlord and Tenant will notify the issuing insurance companies of the release set forth in the preceding paragraph and will have the insurance policies endorsed, if necessary, to prevent invalidation of the insurance coverage.

5.      *Casualty/Total or Partial Destruction*

a.      If the Premises are damaged by casualty and can be restored within ninety (90) days, Landlord will, at its expense, restore the Premises to substantially the same condition that existed before the casualty.  If Landlord fails to complete restoration within ninety (90) days from the date of written notification by Tenant to Landlord of the casualty, Tenant may terminate this lease by written notice of Landlord.

b.      If the Premises cannot be restored within ninety (90) days, Landlord has an option to restore the Premises.  If Landlord chooses not to restore, this lease will terminate.  If Landlord chooses to restore, Landlord will notify Tenant of the estimated time to restore and give Tenant an option to terminate this lease by notifying Landlord within ten (10) days.  If Tenant does not terminate this lease, the lease will continue and Landlord will restore the Premises as provided in a. above.

c.      To the extent the Premises are untenantable after the casualty and the damage was not caused by Tenant, the Rent will be adjusted as may be fair and reasonable.

6.      *Condemnation/Substantial or Partial Taking*

a.      If the Premises cannot be used for the purposes contemplated by this lease because of condemnation or purchase in lieu of condemnation, this lease will terminate.

b.      If there is a condemnation or purchase in lieu of condemnation and this lease is not terminated, Landlord will, at Landlord's expense, restore the Premises, and the Rent payable during the unexpired portion of the Term will be adjusted as may be fair and reasonable.

c.      Tenant will have no claim to the condemnation award or proceeds in lieu of condemnation.

7.      *Uniform Commercial Code.*   Tenant grants Landlord a security interest in Tenant's personal property now or subsequently located on the Premises.  This lease is a security agreement under this Uniform Commercial Code.  Landlord may file a copy of this lease as a financing statement or execute and file a financing statement on behalf of Tenant.

8.      *Default by Landlord/Events.*  Defaults by Landlord are failing to comply with any provision of this lease within thirty (30) days after written notice and failing to provide Essential Services to Tenant within ten (10) days after written notice.

9.      *Default by Landlord/Tenant's Remedies.*  Tenant's remedies for Landlord's default are to sue for damages and, if Landlord does not provide an Essential Service for thirty (30) days after default, terminate this lease.

10. *Default by Tenant/Events.* Defaults by Tenant are (a) failing to pay timely Rent, (b) abandoning or vacating a substantial portion of the Premises, and (c) failing to comply within ten (10) days after written notice with any provision of this lease other than the defaults set forth in (a) and (b) above.

11. *Default by Tenant/Landlord's Remedies.* Landlord's remedies for Tenant's default are to (a) enter and take possession of the Premises, after which Landlord may relet the Premises on behalf of Tenant and receive the Rent directly by reason of the reletting , and Tenant agrees to reimburse Landlord for any reasonable and necessary expenditures made in order to relet; (b) enter the Premises and perform Tenant's obligations; and (c) terminate this lease by written notice and sue for damages, Landlord may enter and take possession of the Premises by self-help, by picking or changing locks if necessary, and may lock out Tenant or any other person who may be occupying the Premises, until the default is cured without being liable for damages.

12. *Default/Waiver/Mitigation.* It is not a waiver of default if the nondefaulting party fails to declare immediately a default or delays in taking any action. Pursuit of any remedies set forth in this lease does not preclude pursuit of other remedies in this lease or provided by law. Landlord and Tenant have a duty to mitigate damages.

13. *Security Deposit.* If Tenant defaults, Landlord may use the Security Deposit to pay arrears of Rent, to repair any damage or injury, or to pay any expense or liability incurred by Landlord as a result of the default.

14. *Holdover.* If Tenant does not vacate the Premises following termination of this lease, Tenant will become a tenant at will and must vacate the Premises on receipt of notice from Landlord. No holding over by Tenant, whether with or without the consent of Landlord, will extend the Term.

15. *Alternative Dispute Resolution.* Landlord and Tenant agree to mediate in good faith before filing a suit for damages.

16. *Attorney's Fees.* If either party retains an attorney to enforce this lease, the party prevailing in litigation is entitled to recover reasonable attorney's fees and court and other costs.

17. *Venue.* Venue is in the county in which the Premises are located.

18. *Entire Agreement.* This lease, together with the attached exhibits and riders, is the entire agreement of the parties, and there are no oral representations, warranties, agreements, or promises pertaining to this lease or to any expressly mentioned exhibits and riders not incorporated in writing in this lease.

19. *Amendment of Lease.* This lease may be amended only by an instrument in writing signed by Landlord and Tenant.

20. *Limitation of Warranties.* THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY, OF FITNESS FOR A PARTICULAR PURPOSE, OR OF ANY OTHER KIND ARISING OUT OF THIS LEASE, AND THERE ARE NOT WARRANTIES THAT EXTEND BEYOND THOSE EXPRESSLY STATED IN THIS LEASE.

21. *Notices.* Any notice required or permitted under this lease must be in writing. Any notice required by this lease will be deemed to be delivered (whether actually received or not) when deposited with the United States Postal Service, postage prepaid, certified mail, return receipt requested, and addressed to the intended recipient at the address shown in this lease. Notice may also be given by

Industrial Lease
JMA Enterprises, Inc./

regular mail, personal delivery, courier delivery, facsimile transmission, or other commercially reasonable means and will be effective when actually received.  Any address for notice may be changed by written notice delivered as provided herein.

22.     *Abandoned Property.*     Landlord may retain, destroy, or dispose of any property left on the Premises at the end of the Term without providing tenant any notice.

23.     *Environmental.*  Tenant shall be responsible for and shall indemnify Landlord against and hold it harmless from any and all loss, liability or damages that Landlord may suffer if any hazardous materials or contamination are deposited into the premises or the property of which they are a part by Tenant. Tenant will be responsible for environmental cleanup of any contamination caused by their company.

**JMA ENTERPRISES, INC.**

BY: _____
JAMES M. ALLEN

ITS: _____
PRESIDENT

**ESP PETRO CHEMICALS**

BY: _____
TONY PRIMEAUX

ITS: _____
PRESIDENT



EXHIBIT "A"

Property Improvements                                                                    EXHIBIT B

**Landlord agrees to pay for and provide the following:**

1. Extend the existing ¾ inch water line to holding tank area
2. Provide six (6) 220 outlets
3. Provide one (1) new fuse box to accommodate eight (8) 220 lines
4. To provide 24 linear ft of used pallet racking as well as support beam
5. To quote out and install security system for property
6. To insure that all security lighting around the property is operable
7. Install airflow sliding curtain on south side of building
8. To ensure connection is available for company name signage

**Tenant agrees to provide and pay for and/or reimburse the Landlord for the following:**

1. Build concrete berm around the rear side of building according to agreed upon specifications and drawing approved by both tenant and Landlord prior to installation.
2. Building of concrete pad to support air compressors. Tenant and Landlord shall split the cost of the double size concrete pad to support the two air compressor's which will be provided the tenant.
3. Landlord will issue invoice to tenant for reimbursement and for purchase and installation of ESP company sign.
4. Tenant will be responsible in making monthly payments to the alarm company
5. Tenant shall reimburse Landlord for providing and installing exhaust fan according to agreed upon specifications approved by both tenant and Landlord prior to ordering the fan.


_____
James M. Allen (Landlord)
JMA Enterprises, Inc.

_____
Tony Primeaux (Tenant)
ESP Petro Chemical, Inc.

EXHIBIT "B" (Drawing provided by ESP)

